PITTSBURGH LOGISTICS SYSTEMS, INC., Appellee,

v.

PROFESSIONAL TRANSPORTATION AND LOGISTICS, INC., Appellant.

Superior Court of Pennsylvania.

Argued May 15, 2002.
Filed July 11, 2002.

Samuel H. Simon, Pittsburgh, for appellant.

W. David Slomski, Pittsburgh, for appellee.

Before FORD ELLIOTT, LALLY–GREEN, and HESTER, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, Professional Transportation and Logistics, Inc., appeals the trial court order dated December 5, 2001, overruling, in part, its preliminary objections in the nature of a petition to compel arbitration. We reverse.

¶ 2 The facts as found by the trial court are as follows:

In 1999, the parties entered into an agreement under which [Appellant] was to provide services to [Pittsburgh Logistics Systems, Inc., (PLS)] relating to transportation services to [PLS'] customers. The agreement spelled out specific responsibilities of the parties and contained the following language pertinent to the issue before the court[.]

"All claims, disputes and other matters and questions arising out of or relating to this agreement, or the breach thereof, shall be resolved by means of arbitration in accordance with the commercial rules of the American Arbitration Association...."

Exhibit A to the Complaint, Paragraph 12.

On July 5, 2001, [PLS] initiated this action by filing a Complaint against [Appellant]. The Complaint sets forth four separate causes of action in four counts. Count 1 is for intentional interference with a prospective contractual relationship; Count 2 is for breach of contract; Count 3 is for breach of fiduciary and common law duties; and Count 4 is for misappropriation of trade secrets.

The gravamen of each cause of action is [that Appellant], while it [was] contractually obligated to assist [PLS] in securing new customers, used confidential and proprietary information of [PLS] to assist a competitor in securing Niagra LaSalle, Inc. as a customer instead of [PLS]. In Count 1, [PLS] alleges that the foregoing conduct of [Appellant] caused it to lose a financial opportunity and profits. In Count 2, [PLS] alleges that the foregoing conduct of [Appellant] constituted a breach of their contract resulting in unspecified damages. In Count 3, [PLS] alleges that [Appellant] had fiduciary duties to protect and hold confidential the trade secrets and proprietary information of [PLS] as a result of the contract between the parties and the foregoing conduct constituted a breach of those fiduciary duties. In Count 4, [PLS] alleges that the defendant wrongfully used [PLS'] trade secrets or disclosed them to others as a result of which [PLS] lost business and future potential business as well as other unknown damages.

Trial Court Opinion, 12/5/01, at 1–2.

¶ 3 Appellant filed preliminary objections to PLS' complaint, claiming that all counts contained therein are to be resolved by arbitration pursuant to the agreement to arbitrate contained in the parties' contract. The trial court overruled the preliminary objections as to Counts I, III, and IV, but sustained them as to Count II, dismissing that Count. This timely appeal followed.[1]

---

1. We note that this appeal is an interlocutory appeal as of right from the denial of a petition to compel arbitration. Pa.R.A.P. 311(a)(8); 42 Pa.C.S.A. § 7320(a); *Cooke v. Equitable*

¶ 4 Appellant presents one issue for our review:

I. Whether the Honorable Trial Judge abused his discretion and/or committed an error of law by failing to follow case precedent set forth by the Pennsylvania Supreme Court in *Ambridge Borough Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974) and the Pennsylvania Superior Court in *Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635 (Pa.Super.1998) and thus, abused his discretion and/or erred by not holding that all claims filed in [PLS'] Complaint be submitted to compulsory arbitration as required in accordance with the agreement between the parties or by not dismissing the entire action.

Appellant's Brief at 4.

¶ 5 Our standard of review of a denial of preliminary objections in the nature of a petition to compel arbitration "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Midomo Co., Inc. v. Presbyterian Hous. Dev. Co.,* 739 A.2d 180, 186 (Pa.Super.1999).

¶ 6 Where a party to a civil action seeks to compel arbitration of that action, a two-part test is employed to determine if arbitration is required. First, the trial court must determine if a valid agreement to arbitrate exists between the parties. *Id.* Second, if the trial court determines that such an agreement does exist, it must then determine if the dispute involved is within the scope of the arbitration provision. *Id.* "The scope of arbitra-

tion is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Henning v. State Farm Mut. Automobile Ins. Co.,* 795 A.2d 994, 996 (Pa.Super.2002), citing, *State Farm Mut. Automobile Ins. Co. v. Coviello,* 233 F.3d 710, 716 (3rd Cir.2000).

¶ 7 Appellant argues that *Ambridge, supra,* and *Shadduck, supra,* require PLS to litigate all of its claims against Appellant in arbitration pursuant to the contract between the parties. The clause providing for arbitration of disputes states in pertinent part:

All claims, disputes and other matters and questions arising out of or relating to this Agreement, or the breach thereof, shall be resolved by means of arbitration in accordance with the commercial rules of the American Arbitration Association, unless the parties mutually agree otherwise.

Exhibit "A" to PLS' Complaint at 5.

¶ 8 Since neither party contests the existence or validity of the agreement to arbitrate, our review focuses on whether the claims are within the scope of the agreement to arbitrate. Thus, we first address *Ambridge* and *Shadduck.*

¶ 9 In *Ambridge,* our Supreme Court held that where a dispute arises between parties to a contract concerning the contract and the contract contains an unlimited arbitration clause, the parties must resolve their dispute through arbitration. *Ambridge,* 328 A.2d at 501–502. There, an employee claimed a right to payment under the contract and compensation for accrued vacation time. *Id.* at 499–500. The employer sought to have its employment contract with an employee declared null

*Life Assurance Soc'y of the United States,* 723 A.2d 723, 726 (Pa.Super.1999) (the dismissal of preliminary objections in the nature of a motion to compel arbitration is immediately appealable).

and void and sought to enjoin the employee from seeking arbitration. *Id.* at 499.

¶ 10 The Court first looked to the language of the arbitration clause which provided: "any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules or the American Arbitration Association...." *Id.* at 499. The Court held that a valid contract to arbitrate existed and that the dispute fell within the scope of the arbitration clause because the employee's claim went directly to obligations created under the contract. *Id.* at 501–502.

¶ 11 In *Shadduck*, this Court held that an agreement to arbitrate disputes arising from the contract encompasses tort claims where the facts which support a tort action also support a breach of contract action. *Shadduck*, 713 A.2d at 638–639. There, the homeowners contracted with the builder to construct a home. *Id.* at 636. The contract included a clause providing for arbitration of "[a]ll claims or disputes between the Contractor and the Owner arising out of, or relating to, this Contract or the breach thereof shall be decided by arbitration...." *Id.* at 637. After completion of the home, the homeowners sued the builder claiming that the builder did not construct the home in accordance with his oral promises and the contract specifications. *Id.* at 636, 638. The *Shadduck* Court noted that "a claim's substance, not its styling, is to control whether the complaining party must proceed to arbitration or may file in the court of common pleas." *Id.* at 637. The Court held that because the factual averments of the tort claims underlie the breach of contract claims, the claims were not temporally or factually distinct and all claims were covered by the arbitration agreement. *Id.* at 638–639.

¶ 12 The instant case is governed by both *Ambridge* and *Shadduck*. Here, the language of the arbitration clause is substantially similar to that found in *Ambridge* and *Shadduck*. Thus, we examine whether the disputes involved are within the scope of the arbitration provision. PLS alleges the following in its complaint:

\* \* \*

3. [PLS] is a transportation logistics company possessing certain proprietary and confidential information, including, but not limited [to] technological information, performance data, financial information, procedures, customer lists, information and prospects, marketing studies and sales plans, proposals, costs and pricing information, and analysis of competitors, all of which have substantial value to [PLS] and which information [PLS] takes great care to maintain as confidential and proprietary information.

4. Sometime in 1995 or 1996, [PLS] and [Appellant] began a business relationship whereby [Appellant] would provide services to [PLS] for non-flatbed, less-than-truck-load transportation services which [PLS] provided and was to provide to its current and future customers.

5. On April 28, 1999, the parties entered into a formal relationship which *inter alia* detailed the services which [Appellant] was to provide to [PLS] and further defined the terms of the parties relationship. A true and correct copy of this contract is attached hereto, incorporated herewith and is marked Exhibit "A".

\* \* \*

7. During the course of the parties['] contractual relationship, [Appellant] learned of, was exposed to and had access to proprietary and confiden-

tial information of [PLS] as described in paragraph 3, . . . .

8. The Agreement between the parties, which is referenced as Exhibit "A" to this Complaint, contains a provision whereby the parties acknowledge the confidential nature of their relationship.

9. One of the agreed upon services [Appellant] was to provide to [PLS] was to assist [PLS] in the acquisition of additional customers.

10. During the past 18 months, [PLS] had been in the process of attempting to acquire as a customer, a certain company known as Niagra La Salle, Inc. This information was known by [Appellant].

11. It is believed and therefore averred that despite the fact that [Appellant] was contractually obligated to [PLS], [Appellant] aided and assisted a competitor of [PLS], in attracting and retaining Niagra La Salle, Inc. as a client, causing Niagra La Salle, Inc. not to become a customer of [PLS].

\* \* \*

PLS' Complaint at 2–4.

¶ 13 The confidentiality clause of the agreement between PLS and Appellant provides:

The parties agree that the terms and conditions of this Agreement constitute confidential information and that the parties shall not disclose the terms and conditions of this Agreement to a third party, either directly or indirectly, provided that disclosure of the terms and conditions of this Agreement shall not constitute a breach of this confidentiality provision if the disclosure is pursuant to a Court Order, subpoena or other legal process, or if the disclosure is necessary for tax purposes or necessary to comply

with the requests of a federal state, or local regulatory agency.

Exhibit "A" to PLS' Complaint at 5.

■ ¶ 14 The trial court determined that the contract between the parties served only as a vehicle to place Appellant in a position to gain the confidential information of PLS. Trial Court Opinion, 12/5/01, at 3. Therefore, the trial court concluded the tort allegations in Counts I, III, and IV do not arise out of the parties' contract. *Id.* Thus, the trial court overruled Appellant's preliminary objections as to those counts. Trial Court Order, 12/5/01.

■ ¶ 15 Our review of the record reflects that PLS' tort claims do arise out of the contract between the parties. In Count I, PLS asserts a cause of action for interference with a prospective contractual relationship. Specifically, PLS averred the following:

### COUNT I

### INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIP

\* \* \*

16. [Appellant] knew of [PLS'] prospective business relationship with Niagra La Salle, Inc. and intentionally and improperly acted in concert with a known competitor of [PLS], aiding and assisting the known competitor to obtain a contract with the prospective customer of [PLS].

17. It is believed and therefore averred that [Appellant] aided and assisted [PLS'] competitor in obtaining a contract with [PLS'] prospective customer by using improperly and

illegally obtained proprietary and trade secret information of [PLS].

Complaint, 7/5/01, at 3–5.

¶ 16 Count I is based on the assertion that Appellant was to assist PLS in acquiring new customers and was contractually obligated to keep confidential the information it acquired through its relationship with PLS. PLS claims that Appellant acted contrary to these duties by preventing PLS from acquiring a certain customer and by inappropriately using the confidential information Appellant acquired through its relationship with PLS. Therefore, this cause of action arises from the contract. Thus, this claim is encompassed by the arbitration agreement.

■ ¶ 17 The third cause of action alleged in PLS's complaint also arises from the contract. In Count III, PLS alleges a cause of action for breach of fiduciary and common law duties owed to PLS. Specifically, PLS averred the following:

### COUNT III

### BREACH OF FIDUCIARY AND COMMON LAW DUTIES OWED TO THE PLAINTIFF

\* \* \*

23. As a result of the **contractual** relationship between the parties, [Appellant] had a fiduciary obligation to protect and hold confidential the trade secrets and proprietary information belonging to [PLS].

24. By engaging in the conduct described above, [Appellant] has breached the fiduciary and common law duties owed by [Appellant] to [PLS].

Complaint, 7/5/01, at 6 (emphasis added).

¶ 18 PLS alleges that Appellant acted in a manner contrary to the parties' contractual relationship. Therefore, this claim arises from the contract. Thus, this claim is encompassed by the arbitration agreement.

■ ¶ 19 The final cause of action arises from the contract. In Count IV, PLS alleges that Appellant misappropriated trade secrets. Specifically, PLS averred the following:

### COUNT IV

### MISAPPROPRIATION OF TRADE SECRETS (CONVERSION)

\* \* \*

27. [Appellant], without right or privilege, has wrongfully and intentionally misappropriated the trade secrets of [PLS] and used them for its own benefit and/or has improperly disclosed them to third parties in such a way that has caused damage to [PLS].

Complaint, 7/5/01, at 7.

¶ 20 PLS asserts that Appellant disclosed confidential information without right or privilege. The confidentiality clause of the contract relates to whether Appellant had any right or privilege over the confidential information it acquired pursuant to its employment with PLS. Therefore, this claim arises from the contract. Thus, this claim is encompassed by the arbitration agreement.

¶ 21 The obligations underlying the confidentiality provision of the contract between PLS and Appellant relate to an obligation under the contract that Appellant allegedly failed to satisfy. Also, like *Shadduck*, the facts averred in PLS' tort claims also support a breach of contract claim; neither are temporarily or factually distinct. *Shadduck*. Therefore, *Ambridge* and *Shadduck* control, and the highly re-

spected trial court abused its discretion by not applying them to the instant case.

¶ 22 Order reversed.