IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
APRIL 9, 2003 Session

# DALE SUPPLY COMPANY v. YORK INTERNATIONAL CORP., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 02C432    Carol Soloman, Judge**

_____

### No. M2002-01408-COA-R3-CV - Filed October 9, 2003

_____

The sole determinative issue on appeal is whether an agreement which mandates arbitration in the event of claims or disputes "arising out of or relating in any way to the relationship of the parties or this Agreement, or the breach thereof," requires arbitration of tort claims including acts arising after the parties' contractual relationship ended. We hold that arbitration of claims of tortious interference with contracts or business relations is required under the terms of the parties' agreement and reverse the judgment of the trial court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

RUSS HELDMAN, SP. J., delivered the opinion of the court, in which BEN CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Ronald George Harris, Nashville, Tennessee, for the appellant, York International Corp.
John Anthony Wolf, Baltimore, Maryland, for the appellant, York International Corp.

Joel Randall Hooper, Brentwood, Tennessee, for the appellee, Dale Supply Company.

## OPINION

The sole determinative issue on appeal is whether an agreement which mandates arbitration in the event of claims or disputes "arising out of or relating in any way to the relationship of the parties or this Agreement, or the breach thereof," requires arbitration of tort claims including acts arising after the parties' contractual relationship ended. We hold that arbitration of claims of tortious interference with contracts or business relations is required under the terms of the parties' agreement and reverse the judgment of the trial court.

Plaintiff-Appellee, Dale Supply Company ("Dale Supply"), is a former distributor of products manufactured by Defendant-Appellant, York International Corporation ("York"). Following York's termination of the parties' Distributor Sales Agreement (the "Agreement"), Dale Supply filed a five

count complaint in Davidson County Circuit Court and asserted claims against both York and Team Air Distributing, Inc. ("Team Air"), the company that succeeded Dale Supply as York's distributor in Middle Tennessee.

The first three counts named only York as a defendant. Dale Supply asserted that the termination was a breach of the Agreement and a violation of Tenn.Code. Ann 47-25-1301, *et seq.*, that York was liable for wrongful termination of the Agreement and that York was liable for misrepresentation because York allegedly misrepresented its intention in continuing its relationship with Dale Supply under the Agreement.

Claims in Counts IV and V asserted that York and Team Air tortiously interfered with Dale Supply's existing contracts with its customers and with Dale Supply's business relations with its customers and dealer. Specifically, Dale Supply alleged that York did this by terminating the Agreement with Dale Supply and by allowing Team Air to sell York products in Dale Supply's former distributorship territory to Dale Supply's former customers.

Relying on an arbitration clause in the Agreement, York responded to the Complaint on March 20, 2002, by filing a Motion To Stay Litigation And To Compel Arbitration, Or In The Alternative, To Dismiss. That motion asked the trial court to compel arbitration of all claims against York and to stay all proceedings. In the alternative, York sought dismissal of the Complaint against it on the ground that the trial court lacked subject matter jurisdiction to adjudicate Dale Supply's claims against York because of the arbitration clause.

In its response to the Motion To Compel Arbitration, Dale Supply conceded that the Federal Arbitration Act applied to the Agreement and that the first three counts should be arbitrated. Nevertheless, Dale Supply asserted that the tort claims in Counts Four and Five of the Complaint should not be arbitrated on the ground that those claims did not arise out of the Agreement.

On May 8, 2002, the Davidson County Circuit Court granted York's motion in part and denied it in part. The trial court ordered Counts I and III to arbitration, but did not order arbitration of the tortious interference claims asserted in Counts IV and V, the trial court stating that the tort claims "shall proceed in this court." On June 6, 2002, York appealed the partial denial of its Motion To Compel Arbitration and filed a Notice of Appeal pursuant to Tenn.R. App.P.3, the Federal Arbitration Act ("FAA"), 9 U.S.C. 16 (1999 & Supp. 2002), and the Tennessee Uniform Arbitration Act ("TUAA"), Tenn. Code. Ann. 29-5-319 (2001). On appeal, York asserts that the lower court erred in refusing to compel arbitration of all counts of the Complaint, including Counts Four and Five.

York is in the business of manufacturing residential and commercial heating and air conditioning products. York's HVAC products are sometimes distributed by independent distributors, and Dale Supply was one such distributor for York. In January 1980, Dale Supply entered into its first contract with York for the purchase, sale and distribution of residential and commercial York HVAC products, as well as related accessories and parts. York and Dale Supply

entered into a subsequent Distributor Sales Agreement on December 16, 1997. That contract superseded any earlier agreement between the parties and was in force at the time of events giving rise to Dale Supply's lawsuit.

The Agreement governed the sale by York and the purchase and distribution by Dale Supply of residential and commercial HVAC products and related accessories and parts in specified counties in Tennessee. The Agreement contained a broad dispute resolution provision that required the parties to arbitrate all claims in the event of disputes, to-wit:

> All claims, disputes, and controversies arising out of or relating in any way to the relationship of the parties or this Agreement, or the breach thereof, whether arising in tort, equity, contract or otherwise, or under any law of the United States or any state or municipality, shall, in lieu of court action, be submitted to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and the award rendered by the arbitrator(s) shall be final and binding on the parties and judgment thereon may be entered in any court of competent jurisdiction. The site of the arbitration shall be York, Pennsylvania, unless another site is mutually agreed between the parties.

The distributorship relationship between York and Dale Supply continued in effect until terminated by York's giving Dale Supply sixty days' notice. The Agreement explicitly provided that it could be terminated by either party, without cause, upon sixty (60) days' notice. York then entered into a contract with Team Air to distribute York products in the geographic area previously assigned to Dale Supply and the lawsuit followed.

In its tortious interference claims Dale Supply alleged that York and Team Air (1) contacted Dale Supply's customers who had placed orders with Dale Supply and offered those customers discounts, rebates, advertising and other incentives to induce them to end their existing business dealings with Dale Supply and take their business to Team Air; (2) used Dale Supply's proprietary information to invite Dale Supply's customers to a meeting during which they introduced Team Air as York's new distributor in the area; and (3) offered Dale Supply's dealers and customers substantial discounts, rebates, advertising and other incentives (which were more favorable than those offered or authorized by York to Dale Supply) to induce Dale Supply's dealers and customers to end their business relationships with Dale Supply and instead place their orders with Team Air. Dale Supply further alleged that as a result of York's incentives to Dale Supply's customers, it suffered a substantial loss of sales and profits that it otherwise would have realized under the Agreement.

The trial court split the resolution of the dispute between Dale Supply and York into two forums. The focus of this Court's inquiry is whether the tort claims in those two counts fall within the scope of the parties' arbitration agreement and therefore are to be arbitrated pursuant to the guiding principles of the FAA. This Court reviews this question of law *de novo*, without a presumption of correctness. *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 356 (Tenn.App.2001).

This Court is of the opinion that the FAA applies to the arbitration agreement contained in the parties' Distributor Sales Agreement. The FAA applies in all cases where there is "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . ." *See* 9 U.S.C. section 2; *see also Frizzell Constr. Co. v. Gatlinburg*, L.L.C., 9 S.W.3d 79, 83 (Tenn.1999). Thus, the FAA governs the enforcement of any agreement to arbitrate in contracts that involve interstate commerce. This is an incontestable proposition, established by the United States Supreme Court and followed by both federal and Tennessee state courts. *See, e.g., Tennessee River Pulp & Paper Co. v. Eichleay Corp.*, 637 S.W.2d 853, 855 (Tenn. 1982); *Berkley v. H & R Block E. Tax Servs., Inc.*, 30 S.W.3d 341, 343 (Tenn.App. 2000); *see also Volt Info. Sciences, Inc. V. Bd. Of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476, 103 S.Ct. 1248, 1254 (1989) (interstate construction contract); *Southland Corp. v. Keating*, 465 U.S. 1, 11, 104 S. Ct. 852, 858 (1984) (interstate franchise agreement); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400, 87 S.Ct. 1801, 1804 (1967) (interstate agreement involving manufacture and sale of paint).

The parties' Agreement plainly involves interstate commerce. Dale Supply is a Tennessee corporation incorporated in Delaware and authorized to do business in Tennessee. The Agreement specifically notes that York's principal place of business is located in York, Pennsylvania. Clearly, the Agreement involved substantial reliance upon interstate transactions, including the flow of goods, services, reports and payments between Pennsylvania and Tennessee. The Complaint makes it clear that the Agreement called for the interstate sale and shipment of goods by York to Dale Supply, as well as the purchase and distribution of York goods by Dale Supply in a prescribed Tennessee territory. Since the Agreement between York and Dale Supply involves interstate commerce, case law arising under the FAA applies to interpret the scope of the arbitration clause to determine whether Dale Supply's tort claims in Counts Four and Five are arbitrable.

The FAA creates a body of federal substantive law that is applicable in both state and federal courts. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 942 n.32 (1983). Accordingly, once it is determined that a dispute involves interstate commerce, the FAA applies regardless of whether the case is pending in state or federal court. *Id*,; *see also Pyburn*, 63 S.W.3d at 356-57 (noting that since Congress did not want state and federal courts to reach different outcomes concerning the validity of arbitration, when the FAA applies, it preempts state law); *Tennessee River Pulp*, 637 S.W.2d at 858 (the FAA "has been held to be substantive rather than procedural and equally applicable in state and federal courts.")

In deciding whether a given dispute is within the scope of an agreement to arbitrate, this Court must take into account the strong policy favoring arbitration, which requires that all doubts be resolved in favor of arbitration. *See e.g., Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25, 103 S.Ct. at 941; *Daisy Mfg. CO.v. NCR Corp.,* 29 F. 3d 389, 396 (8th Cir.1994)(citing *Moses H. Cone Mem'l Hosp.*, 460 Y,S, at 25-26, 103 S. Ct. At 941). Arbitration is an attractive dispute resolution mechanism "because it is a more expeditious and final alternative to litigation." *Arnold v. Morgan Keegan & Co., Inc.,* 914 S.W.2d 445, 449 Tenn.1996)(citing *Boyd v. Davis*, 897 P.2d 1239, 1242

(Wash.1995)). This Court recognizes that the "heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Pyburn*, 63 S.W. 3d at 357.

When a contract contains a broad arbitration clause, as here, in "the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85, 80 S. Ct. 1347, 1354 (1960). "If the allegations underlying the claims 'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." *Tennessee Imports, Inc. v. Filippi*, 745 Supp. 1314, 1325-26 (M.D. Tenn.1990)(citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F2d 840, 847 (2d Cir. 1987); *Mitsubushi Motors Corp. v. Soler Chrysler-Plymouth*, Inc., 473 U.S. 614, 622 b,9, 624 n.13m 105 S. Ct. 3346, 3351 n.9, 3352 n. 13(1985).

The national policy favoring arbitration that is recognized by both federal and state law also withdraws the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 115 S. Ct. 1212, 1216 (1995) (citing *Southland*, 465 U.S. At 10, 104 S.Ct. At 858). When the parties agree to arbitration, the FAA ensures enforcement of the agreement, and the courts cannot require a judicial forum for the resolution of a claim that the parties contractually agreed to arbitrate. *Frizzell*, 9 S.W.3d at 84. Indeed, the very purpose of the FAA is to ensure that the arbitration agreement is enforced according to its terms. *Id.*

The pivotal question for this Court is whether Dale Supply's claims for tortious interference in Counts Four and Five fall within the scope of the arbitration clause in the Distributor Sales Agreement, requiring them to be arbitrated pursuant to the parties' Agreement and the FAA. The answer to that question is "yes." The parties agreed to arbitrate *"all claims, disputes, and controversies arising out of or relating in any way to the relationship of the parties or this Agreement, or the breach thereof, whether arising in tort, equity, contract or otherwise . . .*" This Court interprets that language plainly: that language unequivocally includes the tortious interference claims asserted in Counts Four and Five.

The fact that there are claims sounding in tort rather than contract does not remove them from the scope of the arbitration clause. In the clause under scrutiny, tort claims are specifically within the scope of the arbitration clause. Even without language in an arbitration agreement specifically including such claims, courts addressing the issue have universally found that expansive clauses, like the one between York and Dale Supply, encompass tort claims. *See e.g., American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th Cir.1996). It is immaterial whether the claims are couched in terms of tort, rather than breach of contract. *See, e.g., Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Internat'l Ltd.*, 1 F.3d 639, 643 (7th Cir.1993). The United States Court of Appeals for the Sixth Circuit has recognized that when language of an arbitration agreement is broad, all controversies, including tort claims, are subject to arbitration. *See Federated Dep't*

*Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 869 (6ᵗʰ Cir. 1990) (arbitration clause in agreement was broad enough to encompass a tort claim arising from an alleged breach of contract).

Other state courts applying both federal and state law have held that broad arbitration clauses, such as the one in this case, include tort claims. For example, one Florida court repeated the "axiom of federal and Florida law" that arbitration clauses such as the one here "are to be given broadest possible interpretation to accomplish the salutary purpose of resolving controversies out of court." *Royal Caribbean Cruises, Ltd. v. Universal Employment Agency*, 664 So.2d 1107, 1108 (Fla. Dist. App.1995) (citations omitted). "In common with apparently every other court which has interpreted this language," the court concluded that the plaintiff's tort claims (defamation, fraud, and business interference) were subject to arbitration pursuant to the parties' agreement to arbitrate "any controversy or claim arising out of or relating to this Agreement or the breach of any term of provision hereof." *Id.* at 1108-09. *See also Pittsburgh Logistics Systems, Inc. v. Professional Transportation & Logistics, Inc.,*803 A.2d 776, 779 (Pa. Super. Ct. 2002) (finding tortious interference claim within scope of agreement to arbitrate "all claims, disputes and other matters and questions arising out of or relating to this Agreement, or the breach thereof"); *Bass v. SMG, Inc.* 765 N.E.2d 1079, 1091 (Ill. App.Ct. 2002) (following state and federal authority in favor of arbitration and finding tortious interference claims "enmeshed in the heart of the agreement" and therefore arbitrable).

Dale Supply's tortious interference claims arise from or relate to the Distributor Sales Agreement and are therefore arbitrable. As long as the factual allegations underlying Dale Supply's tortious interference claims "touch upon" or have a significant relationship to the Agreement, they fall within the scope of the arbitration clause in the Agreement. *See e.g., American Recovery,* 96 F. 3d at 94 ("the test for an arbitration clause of this breadth is not whether a claim arose under one agreement or another, but whether a significant relationship exists between the claim and the agreement containing the arbitration clause"). Because all of Dale Supply's tort claims against York arise out of and relate to the performance, termination or breach of the Agreement, they are subject to arbitration.

Dale Supply's tort claims are factually interwoven with, and certainly relate to, the Agreement. Dale Supply alleges that York interfered with its relationships with its customers and that York attempted to reduce Dale Supply's business by offering its customers and dealer inducements to cancel their existing orders and then place them with its new distributor in Dale Supply's former territory. Those claims, Dale Supply's relationship with York, its status as a distributor or York products, the expiration of that relationship, and the transfer of Dale Supply's sales territory to Team Air, all have their genesis in the Agreement. *See Sweet Dreams, 1 F. 3d at 643.*

Fundamentally, the tortious interference claims by Dale Supply are premised on the allegation that, during the course of wrapping up its relationship with Dale Supply and in finding a new distributor to sell its products, York interfered with Dale Supply's right to sell York products to its customers. The alleged tortious interference is inextricably related to York's notice of

termination of Dale Supply and its engaging of Team Air as the new distributor of York products. On January 3, 2001, York gave Dale Supply written sixty-days' notice of its voluntary termination of the Distributor Sales Agreement without cause, effective March 4, 2001. Dale Supply did not cease its distribution for York under the Agreement after receiving notice of termination. Instead, Dale Supply continued to market York products and even "received orders for York products to be delivered to its customers and dealers."

The alleged tortious conduct occurred while Dale Supply continued to sell York products and during the period that the parties were winding down their relationship. In fact, Dale Supply complains that York entered into an agreement with Team Air, as a successor distributorship, to distribute York products in Middle and East Tennessee only a week after Dale Supply was given its sixty-day notice of termination. Moreover, Dale Supply complains that York and Team Air "held discussions. . . regarding a new Distributor Sales Agreement for Middle Tennessee" during the fourth quarter of 2000, prior to York's notice of termination. Dale Supply also complains of a meeting that allegedly occurred on February 15, 2001, within the period of continued performance under the Agreement, at which Team Air was "introduced as Defendant York's new distributor." In actuality, Dale Supply's Complaint is predicted on some conduct occurring prior to the termination of the Agreement. As noted, the Complaint plainly dates the alleged conduct both prior to the notice of termination and within the sixty-day notice period, before the effective date of the termination. The Complaint also is explicitly predicated on "confidential information" that Dale Supply alleges was obtained during the course of the parties' relationship.

A determination of whether York engaged in any wrongful conduct can only be determined in the context of the Agreement which gave Dale Supply a non-exclusive right to distribute York products and which expressly reserved York's right to sell its products in Dale Supply's territory and to terminate Dale Supply without cause. A court cannot determine whether York' actions were improper without first considering and interpreting provisions in the Agreement that gave York the right to sell its products to customers in Dale Supply's territory even during the term of the Agreement.

Nor can a court resolve Dale Supply's claim that its "confidential information" was misappropriated when York transitioned the territory to Team Air without interpreting the Agreement to determine, among other things, whether the information was confidential and whether it (and the customers) belonged to York or Dale Supply. *See e.g., McMahon v. RMS Electronics, Inc.,* 618 F. Supp.189, 191 (S.D.N.Y. 1985) ("when a tort claim is based in substantial part on the contractual rights and responsibilities of the two parties, then it must be arbitrated as required by an arbitration clause").

Dale Supply and York agreed to submit to arbitration all claims, disputes and controversies arising out of or relating to the Agreement, the relationship of the parties, or the breach thereof. The broad scope of the Agreement to arbitrate encompasses all of Dale Supply's tort claims, and therefore Counts Four and Five of the Complaint must be arbitrated. The instruction by the courts of this state and the federal courts that any doubts must be resolved in favor of arbitration mandates

such a result. For instance, in *Tennessee Imports, Inc. v. Filippi,* 745 F. Supp. 1314 (M.D. Tenn.1990), a distributor brought claims for breach of contract and tortious interference with contract against the Italian manufacturer (with whom it had a distribution agreement) and the manufacturer's representative. Finding that the court "should focus on the factual allegations in the complaint rather than the legal causes asserted," the court held the claim was arbitrable if the allegations underlying the claims "touch matters' covered by the parties' contract, whatever the "legal labels' attached to the claims. *Id.* at 1325-26. Applying this principle, the court found that the distributor's breach of contract and tortious Interference claims "touched upon" the parties' agreement in some way and held that the claims therefore were arbitrable. *Id.* at 1326. *See also, Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731, 733 (Tenn.App.2003): "[C]ourts are required to give an arbitration agreement 'as broad a construction as the words and intentions of the parties will allow. . . .' "

Similarly, in *Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494 (Tex.App.2000), tortious interference claims arising out of the termination of a distributorship were held to be arbitrable. In that case Pennzoil and Arnold Oil ("Arnold") had entered into a nonexclusive distributor agreement under which Arnold was given certain rights to distribute Pennzoil's products in south Texas. Pennzoil gave Arnold notice of termination of the contract within sixty days and then contracted with another distributor to serve as its authorized distributor in the area. Following the termination, Arnold sued both Pennzoil and the successor distributor, claiming tortious interference with contract, conspiracy and tortious interference with prospective business relationships. Pennzoil moved to compel arbitration.

The allegations by Arnold were very similar to those asserted by Dale Supply. Arnold alleged that while its contract with Pennzoil was still in effect, Pennzoil and Arnold's successor worked together to induce Arnold's customers to start buying from the successor, instead of Arnold and to undercut Arnold's sales within its territory. *Id.* at 499. Arnold also alleged that the defendants engaged in this conduct to provide justification for Pennzoil to cancel the contract with Arnold and replace it with the successor. *Id.* The arbitration agreement between Pennzoil and Arnold provided that the parties must arbitrate "any controversy or claim arising out of or relating to this Agreement, its performance or the breach thereof." Id. at 498-99. The arbitration clause in the Agreement between York and Dale Supply appears at least as broad as the language in the *Pennzoil* agreement.

Looking at the allegations and the parties' arbitration agreement, the court held in *Pennzoil* that all claims were arbitrable. Among other things, the court specifically determined that Arnold's claim of the tortious interference with future business was based on its allegation that Pennzoil's termination of the contract caused Arnold to lose future business from its existing customers. 30 S.W. 3d at 499. Accordingly, the court found that the claim was "factually interwoven with and relates to the contract and its performance," and the court ordered arbitration of the claims. *Id.*

The fact that Dale Supply has asserted related tort claims against York's co-defendant, Team Air, does not affect the agreement between York and Dale Supply to arbitrate those claims. United States Supreme Court precedent makes it clear that the arbitration clause between York and Dale Supply must be enforced, notwithstanding the fact that common counts are asserted against York and Team Air, and that ordering arbitration means that the tortious interference claims against York and Team Air would be resolved in separate proceedings. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 103 S. Ct. At 927; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238 (1985).

In *Moses H. Cone Mem'l Hosp*, a hospital hired a contractor and an architect to construct additions to the hospital. The hospital's agreement with the contractor had an arbitration clause, but its agreement with the architect did not. 460 U.S. at 5-6, 103 S. Ct. at 931. When the contractor claimed that it had been damaged by virtue of certain delays in the project, the hospital asserted, among other things, that any delay was the fault of the architect who would be liable to the hospital in indemnity. Since the dispute with the architect could not be sent to arbitration without the architect's consent, given the absence of an arbitration clause, the hospital argued that it should not be required to arbitrate with the contractor. Instead, the hospital asked to have all of the related claims adjudicated in court, arguing that it was improper for the hospital to "be forced to resolve these related disputes in different forums." 460 U.S. at 20, 103 S. Ct. at 939. The Supreme Court flatly rejected that argument, and held that multiple actions were to proceed in different forums:

> It is true . . . that if [the contractor] obtains an arbitration order for its dispute, the Hospital will be forced to resolve these related disputes in different forums. That misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other person who are parties to the underlying dispute but not to the arbitration agreement. If the dispute between [the contractor] and the Hospital is arbitrable under the Act, then the Hospital's two disputes will be resolved separately-one in arbitration, and the other (if at all) in state-court litigation.

*Id.*, 460 U.S. 20, 103 S.Ct. 939. The United States Supreme Court reaffirmed this principle in *Dean Witter* where the Court held that "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter*, 470 U.S. at 217, 105 S.Ct. At 1241; see also *Wojcik v. Aetna Life Insurance & Annuity Co.*, 901 F. Supp. 1283 (N.D. Ill.1995).

Dale Supply is not relieved of its duty to arbitrate with York simply because it has related claims against another entity with whom it has no arbitration agreement. The trial court unnecessarily divided resolution of the dispute between Dale Supply and York into two forums, when those parties agreed to only one.

The judgment of the trial court below of May 8, 2002, wherein is ordered that the tort claims "shall proceed" in the trial court, is reversed, the motion for arbitration of all claims is granted and the case is stayed pending arbitration in accordance with the parties' Agreement. This cause is remanded for proceedings consistent with this opinion.  Costs taxed to appellant, Dale Supply Company, and its surety, for which execution may issue if necessary.


_____

RUSS HELDMAN, SPECIAL JUDGE