J-A13034-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| FRANK N. SMOYER, ADMINISTRATOR FOR THE ESTATE OF KATHERINE E. SMOYER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARE ONE, LLC, 890 WEATHERWOOD LANE OPERATING COMPANY, LLC, D/B/A THE REHABILITATION AND NURSING CENTER AT GREATER PITTSBURGH, HEALTHBRIDGE MANAGEMENT, LLC, CARE ONE MANAGEMENT, LLC, DES HOLDING COMPANY, INC., CARE VENTURES, INC., THCI COMPANY, LLC, THCI HOLDING COMPANY, LLC, STRAUS CAPITAL HEALTHCARE PARTNERS (MT), LLC, STRAUS CAPITAL HEALTHCARE PARTNERS (MT) II, LLC, CARE HOLDINGS (MT), LLC, CARE PARTNERS (MT), LLC, CARE REALTY, LLC, AND BARBARA MALLONEE, NHA, | : | |
| Appellants | : | No. 1417 WDA 2017 |

Appeal from the Order Entered August 28, 2017
in the Court of Common Pleas of Westmoreland County,
Civil Division at No(s):  16-05058

BEFORE:  OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED JULY 25, 2018

Care One, LLC; 890 Weatherwood Lane Operating Company, LLC, d/b/a

The Rehabilitation and Nursing Center at Greater Pittsburgh; Healthbridge

Management, LLC; Care One Management, LLC; Des Holding Company, Inc.;

Care Ventures, Inc.; THCI Company, LLC; THCI Holding Company, LLC; Straus

Capital Healthcare Partners (MT), LLC; Straus Capital Healthcare Partners (MT) II, LLC; Care Holdings (MT), LLC; Care Partners (MT), LLC; Care Realty, LLC; and Barbara Mallonee, NHA (collectively referred to as the "Defendants") appeal from the Order denying Defendants' Petition to Compel Arbitration and Motion to Stay Proceedings (hereinafter, the "Petition to arbitrate"). We affirm.

On October 13, 2016, Frank N. Smoyer (hereinafter "Plaintiff"), as Administrator for the Estate of his mother, Katherine E. Smoyer (hereinafter "Decedent"), filed a Complaint against Defendants. Therein, Plaintiff averred that Defendants negligently provided care for Decedent during her period of residency at a nursing home collectively owned and operated by Defendants, i.e., the Rehabilitation and Nursing Center at Greater Pittsburgh (hereinafter the "Facility"). Plaintiff raised claims of, inter alia, negligence and wrongful death, and demanded a jury trial.

Decedent was admitted for care at the Facility on October 23, 2014. That day, Decedent executed with Facility staff a one-page document entitled "Consent to Treat." That document provides as follows:

> It is agreed and understood that a comprehensive Admission Agreement will be executed on or shortly after arrival at the Healthcare Center[, i.e., the Facility,] and that this Consent to Treat merely constitutes [Decedent's] agreement to permit the rendering of healthcare services prior to the execution of the Admission Agreement.
>
> The undersigned hereby consents to medical treatment by the Healthcare Center's staff and authorized agents. The Healthcare Center is authorized to obtain and/or administer all medical tests,

- 2 -

treatments, procedures or medications which may be ordered by a physician.

ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS CONSENT TO TREAT AND BROUGHT BY [DECEDENT], HIS/HER PERSONAL REPRESENTATIVES, HEIRS, ATTORNEYS OR THE RESPONSIBLE PARTY SHALL BE SUBMITTED TO BINDING ARBITRATION[.] ...

Consent to Treat, 10/23/14 (capitalization in original).[1]

Decedent was a resident at the Facility from October 23, 2014, to December 3, 2014, at which point she was transferred to a hospital for care.[2] Decedent died shortly thereafter on January 4, 2015.

Following a procedural history that is not relevant to the instant appeal, on June 23, 2017, Defendants filed a Petition to arbitrate. Therein, Defendants asserted that the Arbitration Clause contained in the Consent to Treat required that the claims raised in Plaintiff's Complaint be resolved via arbitration. In response, Plaintiff argued that the Arbitration Clause was unenforceable (1) for lack of consideration; (2) because it was contained in the Consent to Treat, which merely authorized the Facility to provide

_____

[1] We will hereinafter refer to the third, capitalized paragraph in the Consent to Treat as the "Arbitration Clause." We will refer to the first paragraph in the Consent to Treat as the "Second Agreement Clause."

[2] Notably to the instant appeal, because Decedent was a resident at the Facility for only a brief period, she never executed with Defendants or the Facility a "comprehensive Admission Agreement" pursuant to the Second Agreement Clause.

- 3 -

treatment to Decedent; and (3) as being an unconscionable contract of adhesion. The trial court scheduled a hearing on the matter.

Following the hearing, on August 28, 2017, the trial court entered an Order denying Defendants' Petition to arbitrate. Therein, the trial court found, inter alia, that "the claims raised by Plaintiff [are] not controversies or claims arising out of the Consent to Treat[,] and therefore[,] not subject to the arbitration provision[.]" Order, 8/28/17, at 2 (unnumbered).

Defendants timely filed a Notice of Appeal,[3] followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal. The trial court then issued a Rule 1925(a) Opinion.

Defendants now present the following issues for our review:

1. Did the trial court err by failing to take into account or apply the strong presumption in favor of arbitration emphasized in both the Federal Arbitration Act [("FAA")[4]] and Pennsylvania state law?

2. The [D]ecedent signed an agreement[, i.e., the Consent to Treat,] which provides that "any controversy or claim arising out of or relating to" the agreement must be arbitrated. Are [Defendants'] claims related to the treatment provided by the [F]acility within the scope of the arbitration agreement?

3. The executed [Consent to Treat] agreement also provides that[,] at some point in the future[,] the resident may sign a second agreement, [i.e., a] "comprehensive Admission Agreement." Does the lack of a secondary agreement impact

_____

[3] We note that an appeal may properly "be taken from … [a] court order denying an application to compel arbitration[.]" 42 Pa.C.S.A. § 7320(a)(1); see also Pa.R.A.P. 311(a)(8).

[4] See 9 U.S.C. § 1 et seq.

in any way the arbitration provision in the executed [Consent to Treat] agreement?

Brief for Defendants at 4 (footnote added). As Defendants' issues are interrelated, we will address them together.

Our standard and scope of review is as follows:

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. These are questions of law and our review is plenary.

Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

Setlock v. Pinebrook Pers. Care & Ret. Ctr., 56 A.3d 904, 907-08 (Pa. Super. 2012) (emphasis in original, citation omitted).

In their first issue, Defendants argue that "the FAA governs this dispute, and the public policy of the FAA compels this Court to enforce the arbitration agreement between the parties." Brief for Defendants at 11 (citing KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011) (stating that the FAA "reflects an

- 5 -

emphatic policy in favor of arbitral dispute resolution.") (citation and quotation marks omitted), and Fastuca v. L.W. Molnar & Assocs., 10 A.3d 1230, 1250 (Pa. 2011) (explaining that "the settlement of disputes by arbitration is favored by the public policy of this Commonwealth and is, therefore, encouraged by our courts and by statute.")).

In their second issue, Defendants contend that under the two-part test set forth in Setlock (i.e., concerning whether the trial court should have compelled arbitration), the trial court was obligated to enforce the Arbitration Clause. See Brief for Defendants at 12-22. According to Defendants, (1) a valid agreement to arbitrate exists between Decedent (as well as her heirs) and Defendants, i.e., via the Arbitration Clause; and (2) the dispute is within the scope of the Arbitration Clause, which "is broad and encompasses 'any controversy or claim arising out of or relating to th[e] [C]onsent to [T]reat.'" Id. at 13-16 (quoting Consent to Treat). Concerning this second prong, Defendants assert that the language "any controversy or claim" "sweeps in any tort or contract claim[,]" and thus, "Plaintiff's claims based on purported negligence are the types of controversies the parties intend the [A]rbitration [Clause] to reach." Id. at 18-19. More specifically, Defendants contend as follows:

> Here, the subject of the agreement was [Decedent's] admission to and treatment by the Facility during her residency. The agreement's purpose is stated in plain language as "[Decedent's] agreement to permit the rendering of healthcare services." It was only under this agreement that [Decedent] was able to be admitted to the Facility and receive healthcare services. After

[Decedent] received healthcare services from the Facility, Plaintiff brought negligence claims based on the healthcare services provided. Thus, Plaintiff's negligence claims "aris[e] out of" and "relat[e] to" [Decedent's] receipt of healthcare services, and are within the scope of the agreed[-]upon [A]rbitration [Clause].

Id. at 20 (citation to record omitted); see also id. at 21 (pointing out that "[w]ithout the [Consent to Treat] agreement, [Decedent] could not have received treatment.").

In their third issue, Defendants argue that Decedent's "agreement to arbitrate is unaffected by the lack of a contemplated second agreement[,]" which is referenced in the Second Agreement Clause. Id. at 23. According to Defendants, "[t]he trial court's ruling [improperly] looks beyond the contents of the [Second Agreement Clause] to speculate about a second agreement." Id. Defendants urge that

> [b]ecause the [Second Agreement Clause] is based on a second agreement and the second agreement was not executed, the first agreement[, i.e., the Consent to Treat,] has not terminated. Indeed, the first agreement was in effect during [Decedent's] entire residency because that is the only way the Facility could continue to provide healthcare services to [Decedent].

Id. at 24 (footnote omitted).

In its Opinion, the trial court concisely addressed each of Defendants' issues as follows:

> As to the existence of the agreement, [under the first prong of the above-mentioned test in Setlock,] Defendants presented a document entitled "Consent to Treat" that was signed by [Decedent] on October 23, 2014. The document did contain an arbitration provision. Although Plaintiff argued that the agreement lacked consideration and was unconscionable, Defendants provided case law that supported the enforceability of

- 7 -

such agreements, including Lander Co. v. MMP Inv's., Inc., 107 F.3d 476, 480 (7th Cir. 1997) and Blair v. Scott Specialty Gases, 283 F.3d 595, 603-[]04 (3d Cir. 2011). Therefore, [the trial c]ourt found that Defendants satisfied the first prong of the applicable test by providing [the trial c]ourt with a valid agreement between the parties that contained an arbitration provision.

T[he] [trial c]ourt then focused on the second prong of the applicable test to determine if Plaintiff's claims fell within the scope of the Consent to Treat [A]rbitration [Clause]. Although Defendants may be correct that the [FAA] sets forth a presumption in favor of arbitration, the [A]ct only "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis added). Also, "arbitration agreements are to be strictly construed and such agreements should not be extended by implication." Setlock …, 56 A.[3]d [at] 907 []. The applicable [A]rbitration [Clause] in the current matter reads as follows:

> "ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS CONSENT TO TREAT AND BROUGHT BY THE RESIDENT, HIS/HER PERSONAL REPRESENTATIVES, HEIRS, ATTORNEYS OR THE RESPONSIBLE PARTY SHALL BE SUBMITTED TO BINDING ARBITRATION [….]"

Th[e trial c]ourt strictly construed the above provision and determined that it only mandates arbitration if Plaintiff[']s claims arise out of or relate to the Consent to Treat. In making this determination, the Court must look to the "intention of the parties[,] as ascertained in accordance with the rules governing contracts generally." Pittsburgh Logistics Systems, Inc. v. Professional Tran[s]p. And Logistics, Inc.[,] 803 A.2d 776, 779 (Pa. Super. 2002). In this case, the Consent to Treat document clearly states the scope of the agreement and sets forth the intention of the parties. In the [Second Agreement Clause], the Consent to Treat states as follows:

> "It is agreed and understood that a comprehensive Admission Agreement will be executed on or shortly after arrival at the Healthcare Center and that this Consent to Treat merely constitutes Resident's agreement to permit

the rendering of healthcare services prior to the execution of the Admission Agreement." ([bold] emphasis added [by trial court; italics emphasis added by this panel])

Clearly, the intention of the parties was to limit the scope of the Consent to Treat to [Decedent's] agreement to permit care. This is evident by the use of the term "merely" when setting forth the scope of the Consent to Treat. To arise out of or relate to the Consent to Treat, the claim or controversy must relate to an issue with [Decedent's] grant of consent. If, for example, Plaintiff brought a claim alleging that [Decedent's] consent was made under duress, or that she was incapable of providing consent, then that claim would arise out of and relate to the scope of the Consent to Treat[,] and would be subject to the [A]rbitration [Clause]. Plaintiff's claims are negligence, custodial abuse and neglect, and wrongful death. These claims do not fall within the scope of the [A]rbitration [Clause] because they do not arise or relate to [Decedent's] grant of consent to treat.

Th[e trial c]ourt's position was further supported by the fact that the language of the Consent to Treat[, i.e., the Second Agreement Clause,] contemplates the signing of a comprehensive Admission Agreement, which does set forth [] Defendants' services, duties, and liabilities. There would have been no purpose for the Admission Agreement if the Consent to Treat already set forth the entire agreement between the parties. Therefore, there is no arbitration provision that applies to the claims set forth by Plaintiff[,] and Defendants failed to satisfy the second prong of the applicable [Setlock] test.

Trial Court Opinion, 11/16/17, at 2-5. We agree with the trial court's sound rationale and determination, and affirm on this basis in rejecting each of Defendants' issues, see id., with the following addendum.

The limited scope and purpose of the Consent to Treat was Decedent's grant of consent to the Facility to provide her treatment and care; this is not germane to the issue of negligence pled in Plaintiff's Complaint, and Plaintiff's claims do not "arise out of" or "relate to" the Consent to Treat. See, e.g.,

Setlock, 56 A.3d at 911-12 (in a nursing home negligence case alleging tort liability for the wrongful death of a resident, holding that a "Resident Agreement" executed by the deceased upon her admission to the nursing home, which contained an arbitration provision similar to that in the instant case, did not contemplate or encompass plaintiff's tort claims);[5] accord Brady v. Urbas, 111 A.3d 1155, 1162 (Pa. 2015) (stating that "[t]he patient's actual, affirmative consent … is irrelevant to the question of negligence[,]" and the patient's "assent to treatment does not amount to consent to negligence ….").

Moreover, we are unpersuaded by Defendants' claim that the trial court placed undue weight upon the inclusion of the word "merely" in the Second Agreement Clause, and their position that "'merely' modifies 'constitutes' rather than the subject of the agreement ('to permit the rendering of healthcare services')[.]" Brief for Defendants at 21 n.3. The trial court did not err in finding that the use of the term "merely" announced "the intention of the parties [] to limit the scope of the Consent to Treat to [Decedent's] agreement to permit care." Trial Court Opinion, 11/16/17, at 4.

_____

[5] We are unpersuaded by Defendants' argument that "Setlock is inapposite because the agreement [in that case] 'primarily governed the financial options and obligations of the residents.'" Reply Brief for Defendants at 4 (quoting Setlock, 56 A.3d at 911). Despite this factual difference, the main holding of Setlock nevertheless applies here.

Finally, contrary to Defendants' assertion, we discern no error by the trial court in "look[ing] beyond the contents of the [Second Agreement Clause] to speculate about a second agreement." Id. at 23. Rather, in construing this Clause, the trial court was merely, and properly, considering the entire agreement between Decedent and the Facility, which expressly referenced Decedent's contemplated execution of a later "Admission Agreement." See Huegel v. Mifflin Constr. Co., 796 A.2d 350, 354 (Pa. Super. 2002) (stating that "[i]n order to determine the meaning of [an] agreement, we must examine the entire contract[,] since it is well settled that in construing a contract[,] the intention of the parties governs[,] and that intention must be ascertained from the entire instrument ...." (emphasis added, citation omitted)).

Accordingly, none of Defendants' issues entitle them to relief, and the trial court properly denied their Petition to arbitrate.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/25/2018