**Rodney G. SMAY, Appellee,**

v.

**E.R. STUEBNER, INC. and Skyjack, Inc., and United Rentals, Inc. and United Rentals Aerial Equipment, Inc. and Adams, Eisenhower & Meckley, Inc. d/b/a AEM Architects, Inc. and Berks Rigging & Erecting, Inc. and Multani Associates, Inc. and Rose Hill Construction, Inc. and Eshbach Brothers, L.P. and Conrad Weiser Area School District and Greiner Industries, Inc., Appellees.**

**Appeal of Greiner Industries, Inc., Appellant.**

Superior Court of Pennsylvania.

Argued June 10, 2003.
Filed Dec. 30, 2004.

Robert Dennison and Robert J. Reger, King of Prussia, for appellant.

Gregory S. Hirtzel, Lancaster, for Smay.

Harry D. McMunigal, Wyomissing, for Skyjack.

Edward J. McGinn, Philadelphia for United Rental.

Laura Herzog, Bethlehem, for Rose Hill.

Heidi Villari, Philadelphia, for Conrad Weiser.

Nicholas Noel, Easton, for Adams, Eisenhower & Meckley.

Before: MUSMANNO, BOWES and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 Appellant, Greiner Industries, Inc., appeals from the order denying its petition to compel arbitration. After close review of the parties' briefs and the certified record, we are constrained to reverse the trial court's order and remand for arbitration proceedings.

¶ 2 Rodney Smay, the plaintiff in the underlying action, was injured on a high school construction site in the Conrad Weiser Area School District (the "School District") in the course of his employment and as Appellant's employee. Mr. Smay sustained serious personal injuries when a platform scissor lift that he was using to install wires in the ceiling of the gymnasium fell over and sent him plummeting twenty-five feet to the gymnasium floor. He filed a workers' compensation claim against Appellant and a civil complaint naming Adams, Eisenhower & Meckley, Inc. d/b/a/ AEM Architects, Inc. (the "Architect"), Rose Hill Construction, Inc., E.R. Stuebner, Inc., Skyjack, Inc., United Rentals (North America), Inc. (incorrectly referred to as United Rentals, Inc. and United Rentals Aerial Equipment, Inc.), Berks Rigging & Erecting, Inc., Multani Associates, Inc., Eshbach Brothers, L.P., and the School District as defendants. The School District and the Architect, hereinafter collectively referred to as Appellees, filed joinder complaints against Appellant on November 15, 2001, and January 22, 2001, respectively, wherein they sought indemnification under the construction contract that the School District executed with Appellant.[1] The joinder complaints aver that the alleged injury arose from Appellant's course of performance under the contract with the School District and that pursuant to that contract, Appellant is liable over to Appellees.[2]

¶ 3 On March 21, 2002, Appellant responded to the joinder complaints by writing to the Architect and the School District to demand arbitration to resolve whether Appellant contractually was obligated to indemnify either party. The Architect replied to Appellant's demand with a letter denying that arbitration was appropriate and suggesting that Appellant seek relief from the trial court. The School District never responded to Appellant's written demand for arbitration. On April 10, 2002, Appellant filed a motion to compel arbitration in this action pursuant to its contract with the School District. The trial court heard oral argument on May 10, 2002, and on June 13, 2002, it denied the motion. On July 1, 2002, this interlocutory appeal followed as of right. See Pa.R.A.P. 311(a)(8); 42 Pa.C.S. § 7320(a)(1) (denial of motion to compel arbitration is appealable as of right).[3] While the appeal is pending, the civil action has been partially stayed with respect to matters directed to Appellant.

---

1. Under the Pennsylvania Workers' Compensation statute, an employer may be obligated to indemnify a third party for an employee's action against the third party if the written contract between employer and the third party expressly provides for indemnity, and the contract is executed before the date of the injury. See 77 P.S. § 481(b).

2. The Architect is not a signatory to the contract; instead, it avers third-party-beneficiary status.

3. In its Pa.R.A.P.1925(a) opinion, the trial court surmised that the matter should have been appealed to the Commonwealth Court because the School District is a party. Consequently, Appellees filed motions to quash and/or transfer the action to the Commonwealth Court. We denied the motions on the basis of Derry Township School District v. Suburban Roofing Co., 102 Pa.Cmwlth. 54, 517 A.2d 225, (1986) (acknowledging that contract dispute involving school district can fall within Superior Court's jurisdiction).

¶ 4 Berks Rigging & Erecting, Inc., Multani Associates, Inc., Eshbach Brothers, L.P., and E.R. Stuebner, Inc., each filed a notice of no interest pursuant to Pa.R.A.P. 908. Hence, they have no interest in the disposition of this case. Of the remaining appellees, Skyjack, Inc. and United Rentals (North America), Inc. have failed to file briefs.

¶ 5 On April 1, 2003, subsequent to the filing of this appeal and the entry of a partial stay, the trial court granted two uncontested motions for summary judgment filed by the Architect and Rose Hill Construction, Inc. against the plaintiff and **all** defendants. Thereafter, the Architect filed a notice of no interest in the appeal. No one contests the validity of the April 1, 2003 order in the present appeal. Similarly, on February 4, 2004, the trial court entered summary judgment in favor of the School District against the plaintiff, Mr. Smay. Later, on April 27, 2004, the trial court extended the grant of summary judgment to all cross-claims against the School District. Therefore, as of the date of this writing, Appellees have been dismissed from the underlying action.[4]

¶ 6 The issues before us can be summarized as follows: Whether the trial court erred in denying Appellant's petition to compel arbitration on the basis that the merits of Mr. Smay's underlying personal injury action were beyond the scope of the agreement to arbitrate; whether the Architect, a third-party-beneficiary of the contract, is bound by the arbitration agreement contained in the contract; and whether Appellant waived its right to compel arbitration by availing itself of the common pleas court.

 ¶ 7 We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. *Flender Corp. v. Tippins International, Inc.*, 830 A.2d 1279 (Pa.Super.2003). In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. *Callan v. Oxford Land Development, Inc.*, 858 A.2d 1229 (Pa.Super.2004). The first determination is whether a valid agreement to arbitrate exists. *D & H Distributing Co. v. National Union Fire Ins. Co.*, 817 A.2d 1164 (Pa.Super.2003). The second determination is whether the dispute is within the scope of the agreement. *Id.*

¶ 8 On March 18, 1998, Appellant and the School District executed a contract for the construction of a high school. The contract expressly incorporated the General Conditions of Contract (the "General Conditions") and the more specific Supplementary General Conditions of Contract (the "Supplemental Conditions").[5] These contract documents contained indemnity and arbitration provisions, which read as follows:

**3.18 INDEMNIFICATION**

**3.18.1** To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner [and] Architect ... from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, **arising out of or resulting from perform-**

---

**4.** Although the trial court granted summary judgment in favor of the Architect and School District, the issues on appeal are not moot because the interlocutory orders granting summary judgment are subject to review at the conclusion of the litigation. Further, pursuant to the indemnification clause, the

School District and Architect may pursue a claim to recover the costs and attorneys' fees associated with defending Mr. Smay's action.

**5.** The parties utilized AIA 201–1987, the standard General Conditions endorsed by the American Institute of Architects.

ance of the Work, provided that such claim, damages, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefore, **but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor,** a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

Supplemental Conditions, at 13–14 (emphases added).

### 4.5 ARBITRATION

4.5.1 Controversies and Claims Subject to Arbitration. **Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Association,** and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5 [ (Waiver of Claims: Final Payment) ]. Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered.

General Conditions, at 12 (emphasis added). The School District does not dispute that a valid agreement to arbitrate exists; instead, it argues that the instant dispute is beyond the scope of the agreement.

■ ¶ 9 However, before we can determine the scope of the agreement to arbitrate, we must first address the Architect's claim that it is not subject to the arbitration agreement. According to the Architect, since it is merely a beneficiary of the indemnification provision, rather than a signatory, it is not a party to the contract between Appellant and the School District. The Architect further asserts that it is expressly exempt from the arbitration agreement pursuant to the supplemental conditions of the contract.

■ ¶ 10 In general, only parties to an arbitration agreement are subject to arbitration. *See Cumberland–Perry Area Vocational–Technical School v. Bogar & Bink,* 261 Pa.Super. 350, 396 A.2d 433 (1978) (parties cannot be compelled to arbitrate disputes absent agreement to arbitrate). However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent. *Cf. Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania,* 785 A.2d 93 (Pa.Super.2001) (third-party beneficiary may enforce arbitration clause even though it is not a signatory to the contract).

¶ 11 The fact that the parties conditioned the Architect's participation in arbitration proceedings under the contract initially would appear to militate against a finding that the Architect is bound by the arbitration clause. However, this fact alone is not dispositive of the issue because the provision actually employed by the parties in the supplemental conditions is far less restrictive than the self-serving language suggested by the American Insti-

tute of Architects (AIA) in its form contract.

¶ 12 Indeed, to facilitate consolidation with greater ease, the parties modified the AIA's strict limitation-on-joinder provision that precludes consolidation of an Architect "except by written consent ... signed by the Architect, Owner, Contractor and any other person or entity sought to be joined." General Conditions § 4.5.5, at 13. Under the terms of the revised clause, the School District can waive the exemption, and the parties can compel the Architect to join an arbitration proceeding without obtaining the Architect's consent. The modified provision now reads, "No arbitration arising out of or relating to the Contract Documents shall include by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by the written consent of the Owner." Supplemental Conditions § 4.5.5, at 15. At most, the revision displays the parties' intent to hold the Architect fully accountable under the contract, and at least, it demonstrates that the parties did not intend to grant the Architect a blanket exclusion from any and all arbitration proceedings.

¶ 13 Although the School District did not effectuate an express written waiver in this matter, we believe that joinder is nevertheless necessary as a matter of judicial efficiency because the facts and legal principles implicated in Appellees' claims are identical. Public policy favors arbitration to settle disputes, quickly, fairly, and economically. *See Midomo Company v. Presbyterian Housing Development Co.,* 739 A.2d 180 (Pa.Super.1999). Moreover, in disputes involving identical facts, we have an interest in obtaining consistent results and avoiding an unnecessary waste of resources. *See* Pa.R.C.P. 213(a) ("In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occur-

rence, the court on its own motion or on the motion of any party may ... make orders that avoid unnecessary cost or delay."). These considerations underlie our decision to consolidate Appellees' claims.

¶ 14 The Architect's third-party claim against Appellant is indistinguishable from the School District's claim, and the claims necessarily must endure or fail together. *See Miller v. Allstate Insurance Co.,* 763 A.2d 401, 405 n. 1 (Pa.Super.2000) ("Under Pennsylvania law, a third party beneficiary's rights and limitations in a contract are the same as those of the original contracting parties."). Both claims stem from the same incident, and they implicate identical legal principles. Unless Appellees can demonstrate that the accident was the result, to some extent, of Appellant's negligence, the indemnification provision in the contract is not triggered, and neither Appellee is entitled to relief. However, if we allowed the parties to prosecute their claims separately, we would risk having two independent fact-finders interpret identical fact patterns differently.

¶ 15 Hence, to uphold judicial efficiency, save the parties from duplicative litigation, and maintain the consistency of the verdicts, we direct the Architect to abide by the School District's agreement and try the indistinguishable claims jointly in a proceeding consistent with the arbitration agreement. *Cf. Thermal C/M Services, Inc. v. Penn Maid Dairy Products,* 831 A.2d 1189 (Pa.Super.2003) (affirming trial court's denial of petition to compel arbitration in one of several interrelated civil actions under Pa.R.C.P. 213(a) relating to consolidation of actions involving common questions of law and fact to uphold consistency and judicial efficiency).

¶ 16 Having found that a valid arbitration agreement exists, we must now determine whether the dispute falls within the scope of the agreement. Whether a

claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. *Nationwide Insurance Enterprise v. Moustakidis,* 830 A.2d 1288 (Pa.Super.2003). "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Keystone Technology Group, Inc. v. Kerr Group, Inc.,* 824 A.2d 1223, 1227 (Pa.Super.2003) (quoting *Pittsburgh Logistics Systems, Inc. v. Professional Transportation and Logistics, Inc.,* 803 A.2d 776, 779 (Pa.Super.2002)). "These are questions of law and our review is plenary." *Keystone Technology Group,* 824 A.2d at 1227.

¶ 17 Appellant contends that the parties intended for the arbitration provision to encompass the instant dispute. For the following reasons, we agree.

■■■ ¶ 18 Our determination is guided by the following two principles:

(1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

*Highmark, Inc.,* 785 A.2d at 98, (quoting *Emlenton Area Municipal Authority v. Miles,* 378 Pa.Super. 303, 548 A.2d 623, 625 (1988)).

¶ 19 Under the terms of the contract documents, Appellees are entitled to in-demnification from Appellant only if they can demonstrate that Mr. Smay's injury: 1) arose or resulted from Appellant's work under the contract, and 2) was caused in whole or in part by Appellant's negligent acts or omissions. Since the contract requires that the parties arbitrate "[a]ny controversy or Claim arising out of or related to the Contract" and Appellees aver that the injury arose from the contract, their indemnity claims clearly are subject to arbitration. *See* General Conditions § 4.5.1, at 12. Hence, we find that the broad contract language manifests the parties' clear intent to resolve the instant dispute in arbitration. We reach this conclusion mindful that the facts supporting Appellees' claims are not entirely distinct from Mr. Smay's underlying tort action.

¶ 20 This Court recently confronted a similar issue in *Pittsburgh Logistics Systems, supra,* and held that a tort action for misappropriation of trade secrets, breach of common law fiduciary duties, and interference with contractual relationship was within the scope of the parties' broad arbitration agreement. We concluded that under our Supreme Court's reasoning in *Ambridge Borough Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974), and our rationale in *Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635 (Pa.Super.1998), the parties in *Pittsburgh Logistics Systems* were constrained to resolve any disputes arising under the contract through arbitration because the contract contained an unlimited arbitration clause.[6] The arbitration clause in that case provided as follows: "All claims, disputes and other matters and questions

---

6. The arbitration clause at issue in *Ambridge Borough Water Authority* provided "[t]hat any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules of the American Arbitration Association ...." *Id.* at 547, 328 A.2d at 499. Simi-larly, the clause in *Shadduck* provided, "All claims or disputes between the Contractor and the Owner arising out of, or relating to, this Contract or the breach thereof shall be decided by arbitration ...." *Shadduck, supra* at 637.

arising out of or relating to this Agreement, or the breach thereof, shall be resolved by means of arbitration ...." *Pittsburgh Logistics Systems, supra* at 779.

¶ 21 *Ambridge Borough Water Authority* did not involve a tort claim; rather, it concerned a dispute arising from an employment contract. However, in *Shadduck*, we determined that arbitration was appropriate to resolve a homeowner's claim, *inter alia*, for fraudulent misrepresentation, a claim that sounds in tort. In *Pittsburgh Logistics Systems*, we synthesized the two cases and applied the aforementioned principles to that case even though the appellant's tort and breach-of-contract claims were not temporally or factually distinct. Essentially, we held that where an arbitration clause is unrestricted, the parties to the contract could be compelled to arbitrate any claim that implicates a contractual obligation.

¶ 22 Herein, the arbitration clause similarly is unlimited, and like the clause in *Pittsburgh Logistics Systems*, the broad language encompasses all disputes that relate to a contractual obligation, including Appellant's putative obligation to indemnify the School District. Thus, the trial court erred in failing to compel the parties to arbitrate this issue. *See Warwick Township Water and Sewer Authority v. Boucher & James, Inc.*, 851 A.2d 953, 958 (Pa.Super.2004) ("[G]iven the broad scope of the arbitration language which provides that arbitration is to be the preferred means to resolve all claims arising out of or relating to the contract documents, it was improper for the trial court to rule that the arbitration provision does not apply to the negligence claim."); *Callan, supra* (holding that tort claim that arose from real estate sales contract was subject to arbitration agreement).

¶ 23 Appellees counter that the dispute does not fall within the ambit of the arbitration clause because the underlying action was a personal injury claim. Appellees' position relies primarily upon the Commonwealth Court's decision in *Hazleton Area School District v. Bosak*, 671 A.2d 277 (Pa.Commw.1996). In *Hazleton*, the Commonwealth Court affirmed a common pleas court order that denied a motion to compel arbitration on the ground that the two arbitration clauses at issue in that case did not encompass tort claims. The clauses provided as follows: "Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration ...." *Id.* at 279. The clauses also stated, "[A]ny dispute concerning the subject matter of this AGREEMENT ... between the parties hereto, ... shall be settled in accordance with the American Arbitration Association's Rules and Regulations." *Id.* The *Hazleton* Court concluded that these arbitration clauses did not manifest the parties' intention to arbitrate a claim against the contractor for its negligent performance of the contract. Relying upon its reading of *Muhlenberg Township School District Authority v. Pennsylvania Fortunato Construction Co.*, 460 Pa. 260, 333 A.2d 184 (1975), the Commonwealth Court reasoned that if the parties had intended for the clauses to encompass tort claims then they would have specifically included language indicating as much.

¶ 24 In the case at bar, the trial court found that the arbitration clause did not encompass tort claims because they were not referenced specifically in the arbitration agreement. We disagree with this conclusion on two levels. First, the claim at issue is a matter of contract rather than tort. Second, assuming that Appellant's claim sounds in tort, we are not persuaded by the Commonwealth Court's reasoning in *Hazleton*.

¶ 25 As noted, Appellant's claim raises a contractual issue. Appellant does not seek to arbitrate Mr. Smay's personal injury claim, it merely wants to defend itself from Appellees' assertions in the previously agreed-upon forum. Appellant's petition to compel arbitration specifically requests that the trial court dismiss Appellant from the underlying personal injury action and order the School District and the Architect to arbitrate the contract dispute. The motion prays, in pertinent part, as follows: "WHEREFORE, Additional Defendant, Greiner Industries, Inc. respectfully requests that this Honorable court compel arbitration of the claim of AEM and Conrad Weiser, and dismiss Greiner from this action." Petition to Compel Arbitration, 4/1/02, at 13.

¶ 26 Appellant demanded arbitration only after Appellees' respective *joinder* complaints sought to enforce a contractually-created obligation. The School District's joinder complaint specifically averred that its right to indemnity arose from section 3.18 of the contract, while the Architect based its right to indemnity upon its status as a third-party beneficiary. Accordingly, the issue to be arbitrated is not whether Mr. Smay can prove his personal injury case, but rather, whether Appellees are entitled to be indemnified for any damages they may incur in Mr. Smay's civil action. Resolution of this issue turns on whether the injury arose from the performance of the work and whether Appellant's negligence contributed to the injury. *See* Supplemental Conditions § 3.18.1, at 13. Unless Appellees can satisfy both conditions, they are not entitled to indemnification under the contract. *Id.* Appellees' claims therefore sound in contract rather than tort, and the ultimate resolution of this dispute should be determined in accordance with the contract.

¶ 27 Second, even if the dispute is framed, as Appellees suggest, as involving the underlying tort claim, it remains within the scope of the arbitration agreement. Unlike the trial court, we are not persuaded by the decisions of the Commonwealth Court which suggest that the arbitration clause does not apply.[7]

¶ 28 We believe that the *Hazleton* Court misconstrued our Supreme Court's holding in *Muhlenberg Township*. The arbitration clauses at issue in *Muhlenberg Township* referenced tortious conduct as follows:

> Should either party to this Contract suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damages. 2. Claims under this clause shall be ... be adjusted by agreement or arbitration.

*Id.* at 264, 333 A.2d at 186. The Supreme Court concluded that the phrase "suffer damage in any manner" in the arbitration clause was all-inclusive and extended to the Township's claims against the contractor for faulty materials and workmanship.

¶ 29 Relying on *Muhlenberg Township*, the *Hazleton* Court concluded that since the arbitration clause implicated therein did not expressly and specifically include an action in tort for negligence, the appellant's claim for negligent performance fell outside the scope of the agreement. However, contrary to the *Hazleton* Court's reading of *Muhlenberg Township*, the Supreme Court did not address the scope of the arbitration agreement in relation to a tort claim. In reality, the relevant issue before the Supreme Court was whether the agreement extended to claims for faulty work or faulty materials. Thus, despite our sister court's characterization,

---

7. This Court is not bound by decisions of the Commonwealth Court. *See Yoder v. American Travellers Life Ins. Co.*, 814 A.2d 229, 232 n. 4 (Pa.Super.2002).

*Muhlenberg Township* does not stand for the proposition that an agreement to arbitrate must specifically reference tortious conduct in order for the agreement to apply to disputes arising under the contract which sound in tort. We are loathe to cement the Commonwealth Court's reasoning into our jurisprudence.

¶ 30 As discussed *supra*, the instant arbitration clause is written to encompass "Any controversy or Claim arising out of or related to the Contract[,]" and by its own terms the clause must be read broadly to include all claims arising from the contract regardless of whether the claim sounds in tort or contract. *See Pittsburgh Logistics Systems, supra.* As we have noted, "[A]ll contract disputes does mean all contract disputes unless otherwise agreed by the parties." *Callan, supra* at 1233 (internal quotations omitted) (emphasis added) (citing *Theodore C. Wills Co. v. School District of Boyertown Area,* 837 A.2d 1186 (Pa.Super.2003)). Hence, even assuming that the controversy sought to be decided at arbitration concerned a party's negligence, arbitration is appropriate. *See Warwick Township Water and Sewer Authority, supra.*

¶ 31 Next, Appellees argue that conducting two independent proceedings based on identical facts with potentially divergent outcomes is contrary to public policy and judicial economy. According to Appellees, they will be required to participate in a full-blown trial before the arbitration panel to establish their right to indemnity. Appellees posit that the arbitration proceeding would be needlessly expensive, considering the need for fact witnesses, experts, and exhibits, and that the evidence might have to be duplicated in its entirety before a jury in the underlying personal injury action depending on the final resolution of the interlocutory orders granting judgment in Appellees' favor. We appreciate the problems and attendant costs inherent in duplicative actions; however, we also observe that the instant arbitration can be tailored to avoid the potential tribulations.

¶ 32 In *Thermal C/M Services, Inc. v. Penn Maid Dairy Products,* 831 A.2d 1189 (Pa.Super.2003), we recently addressed a similar issue and affirmed the trial court's denial of a petition to compel arbitration to join a party in an ongoing arbitration proceeding that the petitioner was defending against third parties. We concluded that a pending civil action wherein the petitioner and respondent were among several named parties would dispose of the issue that the petitioner sought to have resolved by joining a party in arbitration. The relevant facts of that case were as follows. The appellant-petitioner was a general contractor that had completed its work but had not received $500,000, which the owner-respondent was withholding for alleged damages associated with a refrigeration unit that malfunctioned during the appellant's performance. The appellant and the owner were among the named parties in one of seven resulting lawsuits, which the trial court consolidated. Without the $500,000 payment from the owner, the appellant was unable to pay its subcontractors. The subcontractors, who were not parties to the consolidated civil action, initiated a subsequent arbitration proceeding against the appellant. In defense of the arbitration claim, the appellant sought to compel the owner to join the arbitration proceedings as an additional defendant. The appellant's putative claim against the owner at arbitration was identical to the claim it asserted as a defense in the underlying civil action.

¶ 33 We concluded that compelling the owner to abide by the arbitration agreement was inappropriate under the circumstances of that case, reasoning as follows:

> The [civil] action ... predates [the appellant's] petition to compel arbitration,

and it will dispose of the issue [the appellant] seeks to arbitrate. [L]itigating the two actions at the same time would be a waste of judicial resources, and it would promote a race to judgment. Undoubtedly, it is more efficient to address the issue in a single disposition rather than have parallel actions in independent forums with potentially different results. Similarly, considering the size and complexity of the consolidated action, it would be unreasonably burdensome to require the parties to litigate these issues concurrently.

*Id.* at 1193.

¶ 34 However, unlike the issues sought to be arbitrated in *Thermal,* the indemnity issue in the case *sub judice* is not an essential issue in the underlying civil action since it does not require a complete assessment of fault. In fact, as discussed *infra,* the arbitration will have absolutely no effect upon the outcome of Mr. Smay's civil action, which continued to progress while this appeal was pending. Further, the instant issue only concerns Appellant and Appellees. It does not involve any outside entities or the other parties to the civil action. In addition, unlike the parties who opposed arbitration in *Thermal,* Appellees no longer are parties to the civil action. Hence, *Thermal* does not persuade us to affirm the trial court's determination in this case.

¶ 35 Although an arbitrator's determination in this case will necessarily entail a finding of fact, it will not require a comprehensive trial. Indeed, the arbitration will be limited in scope. The only issues before the arbitration panel are whether the incident resulted from Appellant's work under the contract and whether the incident was caused, in any way, by Appellant's negligence. Considering that the parties have conceded that Mr. Smay was injured while performing under the contract, the factual determination is limited

to the existence of any negligent conduct on Appellant's part. The arbitration panel need not consider the extent of Appellant's alleged negligence, whether plaintiff or another defendant also was negligent, or whether any putative defenses exist. It is a simple determination; if Appellant's negligent act or omission contributed to the injury, then the indemnification clause has been triggered, and Appellant is a proper third-party defendant in the underlying action.

¶ 36 Further, the parties have already completed extensive discovery, including several depositions and written interrogatories. Since arbitration allows parties to agree upon relaxed evidentiary procedures, the panel may resolve the matter with documentary evidence and depositions rather than live testimony. With a streamlined factual issue and documentary evidence, a condensed arbitration proceeding will be brief and relatively inexpensive.

¶ 37 Moreover, there is *no possibility* that the arbitration will produce an inconsistent result with the subsequent jury trial or prejudice any party's right to a jury trial. The arbitration will be dispositive of whether Appellant's negligence contributed to the accident and whether Appellees are entitled to contractual indemnity from Appellant. However, the arbitration will have no effect on the other factual determinations in the underlying civil case because Appellant, by proceeding to arbitration, will no longer be a party therein. Mr. Smay must still prove his personal injury case before the jury, the defendants will retain all applicable defenses, and the jury will apportion any damages that it awards to Mr. Smay among the named defendants, which no longer include Appellees.

¶ 38 We also observe that Mr. Smay expressly adopted Appellant's position on appeal, and with the exception of Appel-

lees, the defendants claim that they have no interest in our disposition of this appeal. In light of the limited inconvenience that upholding the arbitration agreement would cause to the parties involved and the fact that Appellees created this situation voluntarily by attempting to circumvent the arbitration agreement, we believe that it would be manifestly unjust to deprive Appellant of the benefit of its agreement.

¶ 39 Finally, we do not believe that Appellant has waived its right to compel Appellees to arbitrate this matter. "[A] waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be lightly inferred and unless one's conduct has gained him an undue advantage or resulted in prejudice to another he should not be held to have relinquished the right." *Kwalick v. Bosacco*, 329 Pa.Super. 235, 478 A.2d 50, 52 (1984).

¶ 40 Appellees ask us to review this issue in light of the following test employed by the Commonwealth Court to determine whether a party asserting a right to arbitration has waived that right by accepting the regular channels of the judicial process.

Acceptance of the judicial process is demonstrated when the party (1) fails to raise the issue of arbitration promptly, (2) engages in discovery, (3) files pretrial motions which do not raise the issue of arbitration, (4) waits for adverse rulings on pretrial motions before asserting arbitration, or (5) waits until the case is ready for trial before asserting arbitration.

*St. Clair Area School District Board of Education v. E.I. Associates*, 733 A.2d 677, 682 n. 6 (Pa.Cmwlth.1999). Although we are not constrained to follow this standard, *see Yoder, supra*, we nevertheless find that Appellant has preserved its claimed right to arbitration.

¶ 41 Instantly, Appellant issued a written demand for arbitration upon receiving Appellees' respective joinder complaints. After failing to receive any response from the School District and receiving a negative response from the Architect, Appellant filed its petition to compel arbitration with the trial court on April 1, 2002. Thereafter, on April 10, 2002, Appellant filed answers and new matter to the parties' respective joinder complaints and reasserted its right to arbitration. During the period between the initial written demand for arbitration and the subsequent petition to compel, Appellant participated in discovery that had been proceeding among the named parties to this action. In view of the number of defendants and the magnitude of each discovery request, we believe that Appellant acted prudently by participating in discovery at that time because it risked falling behind in the litigation. In any event, given the procedural posture of this case, Appellant did not waive its right to arbitration merely because it participated in discovery following its initial demand for arbitration. *Cf. Hallo v. Flore*, 386 Pa.Super. 178, 562 A.2d 856 (1989) (right to arbitration waived where party participated in discovery during six-year period between service of complaint and demand for arbitration).

¶ 42 Likewise, since Appellant consistently has asserted its right to arbitration and only used the judicial system to preserve that right and protect its discovery interests, we conclude that it did not voluntarily avail itself of the regular channels of judicial process under the aforementioned standard. *Cf. Samuel J. Marranca General Contracting Co. v. Amerimar Cherry Hill Associates*, 416 Pa.Super. 45, 610 A.2d 499 (1992) (arbitration waived where party asserting arbitration failed to file petition to compel, failed to assert arbitration as affirmative defense in preliminary objections or new matter, waited until

adverse ruling by trial court before invoking arbitration provision, and initiated suits in other jurisdictions relating to contract). Further, beyond the bare assertion of prejudice, Appellees fail to demonstrate how Appellant may have gained an undue advantage by participating in discovery while awaiting responses to its written demands for arbitration. Hence, for all of the foregoing reasons, Appellant did not waive its right to arbitration. *See Keystone Technology Group, Inc., supra* (unless party has gained undue advantage or caused prejudice to another, he is not held to have relinquished the right to demand arbitration.); *Kwalick, supra* (filing complaint or answer without resulting prejudice to objecting party is not tantamount to waiver of right to arbitration).

¶ 43 Accordingly, we vacate the order denying Appellant's motion to compel arbitration, and we direct the trial court to enter an order dismissing Appellant, Greiner Industries, Inc., from this civil action and compelling the Conrad Area School District and AEM Architects, Inc. to pursue their indemnification claims in arbitration.

¶ 44 Order vacated. Matter remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

¶ 45 Judge POPOVICH files a Dissenting Statement.

POPOVICH, J, Dissenting.

¶ 1 I respectfully dissent from the majority's conclusion that the trial court abused its discretion in denying Appellant Greiner Industries, Inc.'s petition to compel arbitration. I believe that the trial court's denial was supported by substantial evidence and, accordingly, would affirm the trial court's denial based upon its reasoning contained in its September 23, 2002 opinion.

¶ 2 Specifically, I believe that the majority erred when it found that the dispute is within the scope of the agreement, *i.e.,* the dispute was contractual in nature.

¶ 3 The trial court found no ambiguity in the contract. *See* Trial court opinion, 9/23/2002, at 7. I agree with the trial court's reasoning that the underlying claim or controversy is not the right to be indemnified but, instead, is the claim for personal injuries by Plaintiff Rodney G. Smay. *See id.,* at 7. This claim is not contractual but is an unrelated tort claim. *See id.,* at 7. Accordingly, I would find that the trial court did not abuse its discretion in finding that the terms of the contract do not require the parties to pursue their indemnification claims through arbitration.

¶ 4 I also disagree with the majority that the reasoning set forth by the Commonwealth Court in *Hazleton Area School District v. Bosak,* 671 A.2d 277 (Pa.Cmwlth. 1996), did not apply to this case.