J-A26036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ATLANTIC COMMUNITY BANKERS BANK, INC., AND JON EVANS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| CHARLES DANIELS AND IMRAN DALVI | |
| Appellants | No. 635 MDA 2014 |

Appeal from the Order Entered March 20, 2014
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 14-250

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

DISSENTING MEMORANDUM BY BOWES, J.:          **FILED MARCH 18, 2015**

My learned colleagues in the Majority hold that Executives' CEPA and unjust enrichment claims against ACBB and Evans fall outside the scope of the arbitration provision in their Employment Agreements.  I respectfully disagree.  I believe that in reaching that conclusion, the Majority has disregarded the plain language of the arbitration provision and impermissibly narrowed its scope.  Since I also find there was a valid agreement to arbitrate, I would reverse and permit the claims to proceed in arbitration. Hence, I dissent.

This Court held in ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 654-655 (Pa.Super. 2013), that in reviewing a claim that the trial court improperly denied arbitration, we employ a two-part test.  ***See Elwyn v.***

*DeLuca*, 48 A.3d 457, 461 (Pa.Super. 2012) (quoting *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa.Super. 2004)). "First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement." *Pisano*, *supra* at 654. The latter involves a question of law and hence, our review of the trial court's conclusion is plenary.

The Majority did not address the first prong since it found the second prong of the test dispositive. A reversal requires that both prongs be satisfied, however. Thus, in support of my belief that ACBB's petition to stay arbitration should have been denied, I will address both the validity and the scope of the arbitration agreement.

Although ACBB was designated a third-party beneficiary of the Employment Agreements, I do not find that label controlling herein. ACBB solicited the services of Executives. It negotiated and drafted the Employment Agreements before BITS even existed. Most notably, ACBB was a signatory to the Employment Agreements. The Agreements conferred not only rights and benefits upon ACBB, but imposed obligations as well. For instance, ACBB was required under the Agreements to provide health and pension benefits to Executives, as well as all fringe benefit programs and perquisites that it offered to its own management. When Jon Evans affixed his signature denoting that ACBB "accepted and agreed [to]" the Executives'

Employment Agreements, ACBB agreed to arbitrate all disputes arising from or relating to the Agreements.

The situation with Jon Evans requires a different analysis. He was not a signatory to the employment agreements in his individual capacity; he signed the Agreements both as the Managing Member of ACBB-BITS, LLC and as President and CEO of ACBB. However, having concluded that his principal ACBB is bound by the terms of the arbitration clause, Mr. Evans, in his capacity as ACBB's President and CEO, is similarly bound as ACBB's agent. While this precise issue appears to be one of first impression in Pennsylvania, several federal circuit courts have applied the parties' agreement to arbitrate claims against agents or entities related to the signatories. ***See Pritzker v. Merrill Lynch, Pierce, Fenner, & Smith***, 7 F.3d 1110, 1122 (3rd Cir. 1993) (because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.).

In ***Arnold v. Arnold Corp.***, 920 F.2d 1269, 1281-82 (6th Cir. 1990), the court enforced an arbitration agreement entered into by the corporation. Since the non-signatory individual defendants were all either officers of the defendant corporation or members of its board of directors who were alleged to have committed wrongful acts in their running of the corporation, the court held that the arbitration clause extended to them as corporate agents. ***See also Letizia v. Prudential Bache Securities***, 802 F.2d 1185, 1187-88

(9th Cir. 1986). I find this reasoning sound. Since my review of the demand for arbitration reveals that the claims against Mr. Evans stem from his conduct as ACBB's CEO and President with regard to Executives and BITS, I would hold that ACBB's agreement to arbitrate extends to Mr. Evans as its corporate agent.

With regard to the second prong, I disagree with the Majority's interpretation of the scope of the arbitration agreement. The arbitration provision at issue was contained in the Executives' Employment Agreements and provided in pertinent part:

> 20. Arbitration. **Any dispute or controversy arising out of or relating to this Agreement or any claimed breach hereof shall be settled, at the request of either party, by an arbitration proceeding** conducted in accordance with the rules of the AAA, with the award determined to be appropriate by the arbitrator therein to be final, non-appealable and binding on the parties hereto, and with judgment upon such award as is rendered in any such arbitration proceeding available for entry and enforcement in any court having jurisdiction of the parties hereto . . . . .

Employment Agreements at 13, ¶20 (emphasis is supplied).

Thus, the issue is whether Executives' claims arise out of or relate to the Employment Agreements or a breach of the Agreements. Instead of determining whether the dispute related to the Employment Agreements, the Majority limited its inquiry to whether the claims were related to ACBB's duties and obligations under the Employment Agreements. It concluded that since the CEPA retaliation claim "does not arise out of, relate to or claim a

- 4 -

breach of covenants in the employment agreements that are intended to protect ACBB" or "ACBB's duty under the employment agreements to provide [Executives] with the same health, pension and fringe benefits that it provides to its own management," it falls outside the scope of the arbitration agreement. Majority Memorandum at 13. Additionally, it found that the unjust enrichment claim arose from the operating agreement, not the Employment Agreements, and had "nothing to do with the covenants in the employment agreements that protect ACBB or with ACBB's duty under the employment agreements to provide [Executives] with health, pension and fringe benefits." *Id*. at 14. With regard to Mr. Evans, the Majority holds that since, he did not possess any individual rights or obligations under the Employments Agreements, any claims against him fell outside the scope of the arbitration agreement.

I believe the arbitration clause compels us to determine whether the "dispute or controversy" is one "arising out of or relating to this [employment] agreement or any claimed breach thereof," and that the Majority instead improperly narrowed its inquiry to whether the claims relate to ACBB's covenants and obligations under the Employment Agreements. Furthermore, the Majority offers no support for such an interpretation of the arbitration clause.

I would point out that similarly-worded arbitration clauses have been labeled "unlimited" and our courts have held that any claims implicating the

contract can be compelled to arbitration, whether they sound in contract or tort. **See Dodds v. Pulte Home Corporation**, 909 A.2d 348, 351 (Pa.Super. 2006) (broadly defining a claim subject to arbitration as any controversy or dispute related to purchase of home); **see also Smay**, **supra** (interpreting broadly "Any controversy or Claim arising out of or related to the Contract" to include all claims arising from the contract regardless of whether the claim sounds in tort or contract).

Executives seek to arbitrate whistleblower and unjust enrichment claims against ACBB and Jon Evans, which stem from their termination as CEO and CFO of BITS, ACBB's subsidiary. The substance of their claims is that ACBB manipulated the sale of membership units in BITS, which reduced the latter's operating capital and their compensation in the form of salaries, bonuses, and profit-sharing while unjustly enriching ACBB and Jon Evans. **See** Demand for Arbitration at 5-6. Such claims relate to Executives' compensation under the Employment Agreements. **See** Employment Agreements at 5-7.

When Executives revealed their intention to expose ACBB's noncompliance with conditions imposed by the Pennsylvania Department of Banking and the Federal Reserve Bank for approval of the formation of BITS, Executives were fired in retaliation. Whistleblower claims for wrongful termination relate to breach of the Employment Agreements. So, too, an allegation that ACBB amended the BITS operating agreement to permit

ACBB to retain a higher percentage of BITS's net income which constituted constructive termination of Executives, is related. *Id*. at 3; **see also** Demand for Arbitration at 6 ("The Employment Agreements expressly provide that any amendment to Section 27 of the Operating Agreement allowing the Managing Member to retain more than 10% of annual net income in reserve would constitute an event of constructive termination.").

I would therefor reverse the trial court's grant of ACBB's petition and permit this matter to proceed in arbitration. For all of the foregoing reasons, I respectfully dissent.