J-S51032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STEFAN SKLAROFF | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ILAN ZAKEN, CELLA LUXURIA, LLC, | : | |
| DR. DENIM, INC., 1216 CHESTNUT, | : | |
| LLC, 331 SOUTH ASSOCIATES, LP, | : | No. 3841 EDA 2016 |
| CASA BY CELLA LUXURIA, LLC, MIRA | : | |
| PROPERTIES, LLC AND MIRA | : | |
| CONSTRUCTION, LLC | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Dated November 15, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  May Term, 2016 No. 160502802

BEFORE:   BOWES, SHOGAN, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED AUGUST 18, 2017**

Appellants[1] appeal from the orders entered in the Court of Common

Pleas of Philadelphia County denying their petition to compel arbitration, as

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellants are Ilan Zaken and his various companies in which he had a majority interest, including Cella Luxuria, LLC, Dr. Denim, Inc., 1216 Chestnut, LLC, 331 South Associates, LP, Casa by Cella Luxuria, LLC, Mira Properties, LLC, and Mira Construction, LLC.

well as their preliminary objections seeking to compel arbitration, in a dispute with Appellee Stefan Sklaroff.[2] After a careful review, we affirm.

The trial court has aptly set forth the relevant facts and procedural history underlying this appeal as follows:

> On May 23, 2016, [Appellee] commenced the instant action by way of writ of summons. On July 21, 2016, [Appellee] filed his first complaint against [Appellants]. On September 2, 2016, following the filing of preliminary objections, [Appellee] filed an amended complaint as of right.

> In his amended complaint, [Appellee] averred as follows: "[Appellant] Ilan Zaken...is a wealthy entrepreneur with a vast portfolio of real estate holdings throughout Philadelphia, Florida, and New Jersey. [Appellant Zaken] also operates numerous retail businesses, as well as a construction company. In 2012, [Appellant] Zaken recruited [Appellee] to open a furniture store with [him] and manage that store. [Appellant] Zaken induced [Appellee's] participation by offering [Appellee] a 25% ownership share in the new furniture company, [Appellant] Cella Luxuria, LLC [("Cella Luxuria")], and a position as co-director of the Cella Luxuria board. [On November 5, 2012, Appellant Zaken, Appellant Cella Luxuria, and Appellee executed an Operating Agreement.[3]]

_____

[2] The denial of a petition to compel arbitration, as well as the denial of preliminary objections seeking to compel arbitration, are appealable as an interlocutory appeal as of right. 42 Pa.C.S.A. § 7320(a)(1); Pa.R.A.P. 311(a)(8).

[3] Relevantly, the Operating Agreement set forth the creation of Cella Luxuria and provided that Appellee had a 25% interest with Appellant Zaken having a 75% interest in the company. *See* Operating Agreement, 11/5/12, at 3. Further, the Operating Agreement set forth the purpose of Cella Luxuria was to engage in the retail sale of furniture with Appellant Zaken as the chief executive officer and Appellee as the general manager. *Id.* at 4. Moreover, the Operating Agreement provided that Cella Luxuria was to be managed by a board consisting solely of Appellee and Appellant Zaken, with Appellee having one board vote and Appellant Zaken having two board votes. *Id.*
*(Footnote Continued Next Page)*

According to [Appellee], "[Appellant] Zaken subsequently exploited his control as majority shareholder and reaped enormous personal financial benefits at [Appellee's] expense." This exploitation include[d], "[o]ver [Appellee's] objections,...drain[ing] Cella Luxuria of over $1 million in resources through blatant self-dealing, including, *inter alia*, the payment of outsize rents at numerous buildings owned by [Appellant Zaken], and gross overpayment for construction services to [Appellant Zaken's] construction company." This exploitation also include[d] "open[ing] a competing furniture store, through a separate LLC, on the same block as [the] Cella Luxuria store."

"Having pillaged Cella Luxuria in gross violation of his fiduciary duty to [Appellee], [Appellant] Zaken then terminated [Appellee's] affiliation with Cella [Luxuria] without cause, in February 2016," according to [Appellee]. Then, [as asserted by Appellee,] "[c]onsistent with his blatant disregard for any obligations to [Appellee], [Appellant] Zaken refused to purchase [Appellee's] [Membership Interest] at an appropriate value upon termination, refused to make tax payments on behalf of [Appellee] for 2015, and refused to provide [Appellee] with financial information to which he was entitled." As a result thereof, [Appellee] brought "this action against [Appellant] Zaken for breach of fiduciary duty, breach of contract, fraud, and against [his] various businesses for knowingly facilitating [his] wrongdoing."[4]

*(Footnote Continued)* _____

Additionally, the Operating Agreement indicated that, upon termination of a member's employment with Cella Luxuria, the other member would "purchase all of the Membership Interest owned by the Terminated Member at the time of such termination. A sale under this Section shall be deemed to have occurred on the date of termination of the Terminated Member." ***Id.*** at 18. Also, the Operating Agreement set forth the distribution for the payment of taxes for Cella Luxuria. ***Id.*** at 12.

[4] Specifically, Appellee alleged in his amended complaint the following: Count 1-Appellants Cella Luxuria and Zaken breached the Operating Agreement by failing to purchase Appellee's stock at fair market value, making tax distributions on behalf of Appellee, making expenditures in excess of $10,000 without proper consent, and failing to provide Appellee with access to corporate books; Count 2-Appellant Zaken breached his
*(Footnote Continued Next Page)*

On September 21, 2016, [Appellants] filed preliminary objections to the amended complaint. On this date, however, [Appellants] also filed a petition to compel arbitration. In both the preliminary objections and the petition to compel arbitration, [Appellants] argued a valid agreement to arbitrate exists in this case. More specifically, [Appellants] asserted:

On or about November 5, 2012, [Appellee] and [Appellants] Cella [Luxuria] and Zaken entered into the Operating Agreement whereby [Appellee] owns a 25% membership interest in Cella [Luxuria] and [Appellant] Zaken owns a 75% interest. Subsequently, [Appellee] and [Appellant] Cella [Luxuria] entered into an Employment Agreement, with an effective date of January 1, 2013.[5] The Employment Agreement modifies and supersedes the Operating Agreement and contains an agreement to arbitrate.

*(Footnote Continued)* _____

fiduciary duty under the Operating Agreement; Count 3- Appellant Zaken's various companies aided and abetted Appellant Zaken in breaching his fiduciary duty under the Operating Agreement; Count 4-Appellant Zaken engaged in fraud by making material misrepresentations regarding market rates, values of goods, and services related to the operation of Cella Luxuria; and Count 5-Appellee sought to pierce the corporate veil as to Appellant Zaken's companies.

[5] The Employment Agreement was executed between Appellant Cella Luxuria and Appellee, and provided that Appellant Cella Luxuria "desires to employ [Appellee] and [Appellee] desires to be employed by the Company upon the terms and conditions set forth herein." Employment Agreement, executed 1/1/13, at 1. The Employment Agreement indicated that Appellee was being employed as the general manager of Appellant Cella Luxuria and appointed to the board of the company. *Id.* The Employment Agreement set forth Appellee's salary, compensation, reimbursable expenses, and other employee benefits. *Id.* at 2-3. The Employment Agreement further set forth that Appellee's employment was "at-will," included an employee confidentiality provision, and set forth how notice of termination of employment was to be given. *Id.* at 3-6. Further, as discussed *infra*, the Employment Agreement contained an arbitration provision.

As such, [Appellants] sought in their preliminary objections to have "all counts of [Appellee's] amended complaint...submitted to binding...arbitration...and any counts or portions of counts not directed to binding arbitration stayed until...after a final binding ruling on all matters submitted to arbitration." [Also, Appellants] sought in their petition to compel arbitration to have "[Appellee]...ordered to participate and present his claims related to [Appellants] Cella [Luxuria] and Zaken and the Operating Agreement in the arbitration matter to be filed by [Appellants] Cella [Luxuria] and Zaken within ten days of receipt of this Order[.]" [Further, that] "any claims that [Appellee] has or may bring against any and all [Appellants] herein stayed until...after a binding ruling on all matters submitted to arbitration."

[Appellee] filed responses in opposition to both the preliminary objections and the petition to compel arbitration. Regarding arbitration, [Appellee] stated in sum:

> [Appellants] have filed preliminary objections seeking to compel arbitration, and have filed a petition to compel arbitration. In doing so, [Appellants] seek to re-cast [Appellee's] amended complaint against [Appellant] Zaken and his many companies as a dispute concerning [Appellee's] Employment Agreement with Cella [Luxuria], which contains an arbitration clause. But [Appellee] has not asserted any claim under the Employment Agreement. By conflating the Cella [Luxuria] Operating Agreement with the entirely separate Employment Agreement, [Appellants] disingenuously attempt to impose an arbitration provision on a foundational corporate agreement that made no mention of arbitration. What is more, [Appellants] ask the court to require arbitration of [Appellee's] claims against [Appellant] Zaken and his other companies despite the fact that none of those [Appellants] were party to [Appellee's] Employment Agreement.

More specifically, [Appellee] relied on cases such as *Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa.Super. 2012), which provide a two-part test to determine whether to compel arbitration with the first determination being "whether a valid agreement to arbitrate exists" and the second determination being "whether the dispute is within the scope of arbitration." [Appellee] then

- 5 -

asserted "the Operating Agreement contains no arbitration clause; [Appellee's] Employment Agreement with Cella [Luxuria], to which [Appellant] Zaken is not a party, did not supersede the Operating Agreement; and the vast majority of [Appellee's] claims are against [Appellant] Zaken and his companies, who were not parties to the Employment Agreement." And, finally, [Appellee] argued "under the standard set forth by the Superior Court in *Elwyn*, arbitration is improper as to [Appellee's] claims."

By orders dated November 15, 2016, and docketed November 16, 2016, [the trial court] denied [Appellants'] petition to compel arbitration and overruled [Appellants'] preliminary objections. On December 1, 2016, [Appellants] filed a notice of appeal to those orders. Subsequently, the [trial court] ordered [Appellants] to file a [Pa.R.A.P.] 1925(b) statement, which they timely did so on December 21, 2016. [The trial court filed a responsive Pa.R.A.P. 1925(a) opinion.]

Trial Court Opinion, 1/19/17, at 1-4 (citations to record and emphasis omitted) (footnotes added).

On appeal, Appellants present the following issues:

1. Whether the trial court erred in denying Appellants' petition to compel arbitration and for a stay of proceedings and preliminary objections to compel arbitration pursuant to the Pennsylvania Arbitration Act because the written Employment Agreement of [Appellee] contained an enforceable arbitration agreement and the claims in the amended complaint fall within the scope of the arbitration agreement?

2. Whether the trial court erred in holding that [Appellee's] Employment Agreement with Appellant Cella Luxuria did not amend, modify, or supersede the Cella Luxuria Operating Agreement?

3. Whether the trial court erred in failing to recognize that related parties are bound by the valid arbitration agreement governing the dispute[?]

Appellants' Brief at 3-4.

Appellants issues are intertwined. Essentially, Appellants contend that the execution of the Operating Agreement on November 5, 2012, was modified and/or superseded by the execution of the Employment Agreement on January 1, 2013. Further, Appellants allege that the Employment Agreement contains a valid arbitration agreement and the claims presented in Appellee's amended complaint fall within the scope of the Employment Agreement.

We review the trial court's denial of a petition to compel arbitration, as well as the trial court's denial of preliminary objections in the nature of a petition to compel arbitration, for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1112-13 (Pa.Super. 2007); *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa.Super. 2004). "[W]e employ a two-part test to determine whether the trial court should have compelled arbitration." *Smay*, 864 A.2d at 1270 (citation omitted). The first determination is whether a valid agreement to arbitrate exists. *Id.* The second determination is whether the dispute or claims at issue fall within the scope of the agreement. *Id.*

"[A]rbitration cannot be compelled in the absence of an express agreement to arbitrate." *Gaffer Ins. Co., Ltd.*, 936 A.2d at 1113 (citation omitted).

> The touchstone of any valid contract is mutual assent and consideration. The issue of whether parties agreed to arbitrate

is generally one for the court, not the arbitrators. When addressing that issue, courts generally apply ordinary state law contract principles, "but in doing so, must give due regard to the federal policy favoring arbitration."

***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa.Super. 2015) (citations and quotation omitted).

The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. ***See id.***

> [Since] [a]rbitration is a matter of contract,...parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue....[A]rbitration agreements are to be strictly construed and such agreements should not be extended by implication.
>
> In general, only parties to an arbitration agreement are subject to arbitration. However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent.

***Elwyn***, 48 A.3d at 461 (quotations omitted).

In the instant case, the issues presented are strictly of contract interpretation. In interpreting a contract, we are guided by the following legal precepts:

> When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. In construing a contract, we must determine the intent of the parties and give effect to all of the provisions therein. An interpretation will not be given to one part of the contract which will annul another part of it.
>
> We emphasize that the contract must be interpreted as a whole, and an interpretation that gives effect to all of the contract's provisions is preferred. In addition, a preferred

contract interpretation ascribes under all circumstances the most reasonable, probable, and natural conduct to the parties.

*Gaffer Ins. Co., Ltd.*, 936 A.2d at 1113 (citations, quotation marks, and quotation omitted).

In the case *sub judice*, Appellants acknowledge that the Operating Agreement (executed between Appellant Zaken, Appellant Cella Luxuria, and Appellee on November 5, 2012) does not contain an arbitration provision; however, Appellants initially aver the Employment Agreement (executed between Appellant Cella Luxuria and Appellee on January 1, 2013) contains a valid arbitration provision, which superseded and/or modified the Operating Agreement.

In developing their argument, Appellants point to the following paragraphs of the Employment Agreement. Paragraph 12 of the Employment Agreement provides, in relevant part, that "[a]ny claim or controversy arising out of or relating to this Agreement or any breach thereof shall be settled by arbitration[.]" Employment Agreement, executed 1/1/13, at 7. Moreover, in paragraph 15, the Employment Agreement provides:

> **15. Modification.**
> This Agreement sets forth the entire agreement and understanding of the parties concerning the subject matter hereof and supersedes all prior agreements, arrangements and understandings between the parties hereto. No representation, promise, inducement or statement of intention has been made by or on behalf of either party hereto that is not set forth in this Agreement. This Agreement may not be amended or modified except by written instrument executed by the parties hereto.

- 9 -

*Id.* (bold in original).

In addressing Appellants' claim that a valid agreement to arbitrate existed in the Employment Agreement and such agreement modified and/or superseded the Operating Agreement, the trial court held as follows:

> While the Court agree[s] [with Appellants] that Paragraph 12 [of the Employment Agreement] contains a valid agreement to arbitrate, the Court does not agree Paragraph 15 caused the Employment Agreement to modify or supersede the Operating Agreement.
>
> First, Paragraph 15 state[s] that the Employment Agreement "sets forth the entire agreement and understanding of the parties concerning the subject matter hereof...." By its terms, the Employment Agreement only concerned the employment of [Appellee] by Cella [Luxuria]. By contrast, the Operating Agreement addresses the creation, operation, and governance of Cella [Luxuria]; it in no way addressed Cella [Luxuria's] employment of [Appellee] (or any other person). Therefore, [Appellants] cannot credibly claim the Employment Agreement modifies and supersedes the Operating Agreement, and the Court will not read a boilerplate "no oral modification"/merger provision to do so.
>
> ***
>
> [Moreover,] the Employment Agreement only purports to supersede prior agreements, arrangements and understandings "between the parties [thereto]." The parties to the Operating Agreement and the Employment Agreement, however, are distinct: [Appellee], Cella [Luxuria], and [Appellant] Zaken are all [named] parties to the Operating Agreement, whereas only [Appellee] and Cella [Luxuria] are [named] parties to the Employment Agreement.
>
> ***
>
> The Court's conclusion that the Employment Agreement did not modify or supersede the Operating Agreement is further supported by Paragraph 1(d) of the Employment Agreement, which states "[t]he Company [(Cella Luxuria)] represents and warrants to Employee [(Appellee)] that this Agreement has been duly and validly authorized and executed by and on behalf of the

Company in accordance with its certificates of organization and operating agreement and that constitutes [a] lawful and valid obligation of the Company." [Cella Luxuria's representation in the Employment Agreement] that the Employment Agreement constitutes a valid corporate obligation undertaken in accordance with the Operating Agreement is plainly inconsistent with [Appellants'] argument that the Employment Agreement superseded the Operating Agreement. Rather, this representation [in the Employment Agreement] clearly establishes that the two agreements independently cover two different subjects: the Employment Agreement governed [Appellee's] employment, whereas the Operating Agreement governs [the] operation of the business, including the repurchase of a Terminated Member's Membership Interest. Therefore, the Employment Agreement did not supersede the Operating Agreement, but rather was an independent agreement.

Trial Court Opinion, filed 1/19/17, at 7-10 (citations to record and emphasis omitted).

We agree with the trial court's reasoning in this regard. In applying the rules of contract interpretation, we agree with the trial court that the Employment Agreement is a separate, independent agreement which did not supersede or modify the Operating Agreement, particularly as it relates to the arbitration provision at issue in the Employment Agreement. **See**

**Gaffer Ins. Co., Ltd.**, **supra**.

Further, with regard to Appellants' suggestion that Appellant Zaken, as well as his other companies being sued by Appellee, were third party beneficiaries of the Employment Agreement, the trial court rejected this argument as follows:

[N]othing in the Employment Agreement suggests that [Appellant Zaken and his other companies were] third-party

- 11 -

beneficiar[ies] [of the Employment Agreement]. [Even if evidence outside of the contracts was considered], [Appellants have not] offered any factual support for their assertion the parties desired to make [Appellant Zaken and his other companies] beneficiar[ies] of the Employment Agreement, other than the fact that [they] would now rather arbitrate [Appellee's] claims under the Operating Agreement than litigate them.

Trial Court Opinion, filed 1/19/17, at 9-10.

We agree with the trial court's reasoning in this regard. While third-party beneficiaries may fall within the scope of an arbitration agreement, there is no support for Appellants' argument that such was the parties' intent with regard to the Employment Agreement's arbitration provision. **See Elwyn**, **supra**.

Finally, we agree with the trial court that the issues presented in Appellee's amended complaint otherwise fall within the scope of the Operating Agreement, for which there is no arbitration agreement, and not within the scope of the Employment Agreement. As the trial court aptly indicated:

> In determining whether [the] arbitration provision [in the Employment Agreement] applies to [Appellee's] causes of action, "the critical analysis...hinges on whether the dispute arises out of the contract"...[and the] "degree of applicability of [the] arbitration clause is controlled by the scope of the agreement."
>
> Here, [Appellee's] claims fall outside the scope of the Employment Agreement. Pursuant to the Operating Agreement, [Appellee] alleges [in his amended complaint that] Cella [Luxuria] failed to purchase [Appellee's] Membership Interest at fair market value and failed to make a tax distribution on behalf of [Appellee] for 2015. Pursuant to the Operating Agreement, [Appellee] alleges [Appellant] Zaken failed to issue a tax distribution on behalf of [Appellee] for 2015; made expenditures in excess of $10,000 without unanimous consent of the board of

directors; and failed to provide [Appellee] with access to corporate books and records. Clearly, the instant dispute arises out of the earlier, broader Operating Agreement, [and] not the later, narrower Employment Agreement.

[T]he alleged breaches [in Appellee's amended complaint] have nothing to do with the Employment Agreement, which solely governed [Appellee's] employment[.]

Trial Court Opinion, filed 1/19/17, at 10-11 (quotation omitted).

We agree with the trial court's reasoning in this regard. **See Setlock v. Pinebrook Personal Care & Retirement Center**, 56 A.3d 904, 910 (Pa.Super. 2012) (holding that, once the court determines a valid agreement to arbitrate exists, the court should order arbitration only as to those disputes within the scope of the arbitration provision). Although the arbitration provision in the Employment Agreement has a "broad reach," there is no support for Appellants' argument that the parties intended the arbitration provision to reach beyond claims arising from or relating to the terms of the Employment Agreement itself. Accordingly, since the claims raised in Appellee's amended complaint pertain to the Operating Agreement, for which there is no arbitration agreement, we conclude the trial court did not abuse its discretion in denying Appellants' attempts to compel arbitration. **See Smay**, **supra**.

For all of the foregoing reasons, we affirm the trial court's orders.

Orders Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/18/2017