J-A25016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| APRIL COBB | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TESLA, INC. | : | |
| | : | |
| Appellant | : | No. 2879 EDA 2024 |

Appeal from the Order Entered September 26, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 231202254

BEFORE: LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED FEBRUARY 18, 2026**

Tesla, Inc. ("Tesla") appeals from the order denying its petition to compel arbitration. We vacate and remand for additional proceedings consistent with this memorandum.

The trial court aptly summarized the background of this matter as follows:

> Plaintiff April Cobb began employment as a materials handler at Tesla's Bethlehem, Pennsylvania factory on August 24, 2020. Before starting her job with Tesla, on August 18, 2020, Ms. Cobb signed [a three and one-half page] agreement (the "Agreement") that set forth the terms of her employment with Tesla. Tesla presented the Agreement to Ms. Cobb in electronic form, and she made an electronic signature on the Agreement using an electronic device. [Ms.] Cobb no longer works at Tesla.
>
> The Agreement provided that any disputes arising in connection with her employment would be resolved by binding

_____

[*] Retired Senior Judge assigned to the Superior Court.

arbitration. The provision states that "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ('JAMS'), under the then current rules of JAMS for employment disputes[.]" The Agreement also provides that "any claim, dispute, or cause of action between the parties must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding[.]"

The Agreement does not define arbitration. The entire agreement is in small print, and the arbitration provision is not in bold, capital letters, large print[,] or a different color from the rest of the text; nor is it set off with a heading. While the provision prohibits bringing any claim or dispute as a class action, it nowhere states that by signing the Agreement Ms. [Cobb] is waiving her constitutional right to a jury trial.

Tesla suffered a data breach on May 10, 2023, when two former Tesla employees allegedly stole the personal identifying information of Ms. Cobb and other former Tesla employees and shared it with a foreign media outlet. On August 23, 2023, Tesla sent Ms. Cobb a notice . . . informing her of the data breach.

On December 19, 2023, Ms. Cobb filed a class action complaint against Tesla for [negligence, breach of implied contract, and breach of confidence]. Ms. Cobb subsequently filed an amended complaint and, on May 4, 2024, a second amended complaint that named Ms. Cobb as the sole class representative.

On April 5, 2024, Tesla filed a petition to compel arbitration . . . and sought a stay of further consideration of this action until arbitration is decided. A hearing on Tesla's petition to compel arbitration was held on June 27, 2024. Neither party presented any witnesses[,] and instead relied on agreed facts filed in a stipulation on June 20, 2024.

Opinion, 9/26/24, at 1-3 (cleaned up).

The court took the matter under advisement, ultimately denying Tesla's petition by order and opinion on September 26, 2024. As will be discussed in more detail below, the court's opinion relied heavily upon this Court's *en banc* decision of ***Chilutti v. Uber Techs., Inc.***, 300 A.3d 430 (Pa.Super. 2023) (*en banc*) ("***Chilutti I***"),[1] wherein we examined arbitration provisions in the context of "browsewrap" contracts.[2]

This timely appeal followed. The court ordered Tesla to submit a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b),[3] and Tesla complied. The court authored a responsive opinion pursuant to Rule 1925(a), incorporating its previous opinion addressing the denial of the petition to compel arbitration.

Tesla presents four questions for our consideration:

---

[1] At the time of the trial court's decision, our High Court had granted allowance of appeal with respect to ***Chilutti I*** to consider multiple issues, including the appealability of the court's order compelling arbitration. After the parties submitted briefs to this Court in the case *sub judice*, the Supreme Court entered an opinion vacating our judgment in ***Chilutti I*** and ordering us to quash the appeal. ***See Chilutti v. Uber Technologies, Inc.***, __ A.3d __, 2026 WL 156181, at *7 (Pa. Jan. 21, 2026) ("***Chilutti II***").

[2] Such agreements are those "in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website," and typically do not require an electronic signature. ***See Chilutti I***, 300 A.3d at 444.

[3] We remind the trial court that all Rule 1925(b) orders must provide "that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) **shall** be deemed waived." Pa.R.A.P. 1925(b)(3)(iv) (emphasis added).

1.     Did the trial court abuse its discretion in denying Tesla's petition to compel arbitration on the basis that [Ms.] Cobb did not assent to the Agreement where the Agreement's arbitration provision was unambiguous, was plainly visible and took up almost a full page of a three-and-a-half-page agreement, and appeared in the same format as the Agreement's other provisions?

2.     Did the trial court abuse its discretion in denying Tesla's petition to compel arbitration by expanding the holding of [**Chilutti I**], a case dealing only with consumer browsewrap agreements, to the context of employment agreements?

3.     Did the trial court abuse its discretion in denying Tesla's petition to compel arbitration on the basis that [Ms.] Cobb did not assent to the Agreement where the parties stipulated that [she] signed the Agreement and there was no evidence in the record that [she] did not understand the Agreement's terms?

4.     Did the trial court abuse its discretion in interpreting [**Chilutti I**] in such a broad way that it would be preempted by federal law?

Tesla's brief at 3-4 (cleaned up).

We begin our review by noting that "[a]n order denying a petition to compel arbitration is an interlocutory order appealable as of right." *Fineman, Krekstein & Harris, P.C. v. Perr*, 278 A.3d 385, 389 (Pa.Super. 2022) (citation omitted); *see also* 42 Pa.C.S. § 7320(a)(1) (stating that an appeal may be taken from "[a] court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration)"). All four of Tesla's issues pertain to the court's denial of its petition to compel arbitration, and thus, we address them together. To that end, "[o]ur standard of review . . . is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial

- 4 -

court abused its discretion in denying the petition." **Perr**, 278 A.3d at 389. (citation omitted).

This Court has expounded as follows: "[W]e employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement." **Smay v. E.R. Stuebner, Inc.**, 864 A.2d 1266, 1270 (Pa.Super. 2004) (citations omitted). Additionally, "[w]hether an agreement to arbitrate disputes exists is a question of law. When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law." **Neuhard v. Travelers Ins. Co.**, 831 A.2d 602, 604 (Pa.Super. 2003) (citations omitted).

In the instant matter, the trial court only answered the first question because it found that that there was no valid agreement to arbitrate.[4] Hence, we focus our inquiry on that issue. "To determine whether a valid agreement to arbitrate exists, courts apply state law principles of contract law." **Santiago v. Philly Trampoline Park, LLC**, 343 A.3d 995, 1004 (Pa. 2025) (citation omitted). The Pennsylvania Supreme Court has stated that "[a]n agreement to submit a claim to arbitration forfeits the right to have that claim adjudicated in court." **Id**. at 1012. Although the right to a jury trial is

---

[4] Accordingly, the court did not render a decision as to the second prong discussed in **Smay**, *i.e.*, whether the dispute fell within the scope of the agreement.

enshrined in our constitution, "[t]his Commonwealth favors the settlement of disputes by arbitration as a matter of public policy, as it offers a means to a swift and easy disposition of claims." *Id*. at 1004 (citation omitted).

With this background in mind, we turn to the underlying matter. In denying Tesla's petition to enforce arbitration, the trial court, citing *Chilutti I*, determined that there was no enforceable arbitration agreement.[5] *See* Opinion, 9/26/24, at 3. The court stated that "the arbitration provision in the Agreement in this case fail[ed] to provide reasonably conspicuous notice of the terms that will bind Ms. Cobb." *Id*. at 4. Particularly, it noted that the clause was the same font size and color as the remainder of the three-and-one-half-page letter Agreement. *Id*. The court likewise found that Tesla failed

_____

[5] As noted, the trial court heavily relied upon, and both parties predominantly discuss on appeal, our *en banc* decision in *Chilutti I*. There, we found that the arbitration provisions contained within browsewrap agreements utilized by Uber Technologies, Inc. ("Uber") on its website and its mobile application did not create an enforceable agreement. *See Chilutti I*, 300 A.3d at 451. Very recently, our High Court reviewed the matter and concluded that "the trial court's order granting Uber's petition to compel arbitration and staying court proceedings does not qualify as a collateral order." *Chilutti II*, 2026 WL 156181 at *7. The High Court therefore vacated our decision in *Chilutti I* on procedural grounds and directed that we enter an order quashing the appeal. *Id*. The Court did not reach the merits of the claims relating to the enforceability of the arbitration provision.

As such, *Chilutti I* is no longer controlling law. *See*, *e.g.*, *Commonwealth v. Morris*, 958 A.2d 569, 580 n.1 (Pa.Super. 2008) ("It is well-settled that if the Supreme Court overturns this Court's ruling, this Court's decision is no longer binding precedent and the Supreme Court's ruling becomes binding precedent." (citation omitted)). To the extent that we discuss or cite *Chilutti I* in this memorandum, it is to frame the position of the trial court and the parties and for ease of disposition.

to do anything else to distinguish the provision, such as including a heading, bold typeface, or underlining. *Id*.

Additionally, the court discussed that the Agreement did not define the term "arbitration" and did not explicitly state that Ms. Cobb was waiving her right to a jury trial. *Id*. It indicated that despite executing the Agreement, "any non-lawyer like Ms. Cobb could reasonably believe that she [was] not relinquishing her constitutional right to a jury trial." *Id*. Accordingly, the court concluded that the provision did not satisfy the requirements set forth by this Court, particularly as articulated in *Chilutti I*.

In response, Tesla contends that the trial court improperly imposed conspicuity requirements to the arbitration provision, which undermines the application of general contract principles. *See* Tesla's brief at 10-12. The company concedes that, statutorily, certain types of agreements require special formatting. *Id*. at 12 (discussing health club and home improvement installment contracts). However, Tesla maintains that "Pennsylvania law does not require that an arbitration provision be set off with a heading, underlined, capitalized, bolded, or in a specific font size to be enforceable." *Id*. It argues also that the terms of the provision at issue are clear, outlining what claims are subject to arbitration, which entity arbitration would be held under, and the like. *Id*. at 13. Tesla criticizes the trial court for relying upon what understanding a non-lawyer may make of an arbitration provision, instead citing foreign caselaw for the proposition that loss of a jury trial is a "fairly obvious consequence" of agreeing to arbitrate a claim. *Id*. Furthermore,

- 7 -

Tesla asserts that **Chilutti I** was decided in the specific context of consumer browsewrap agreements, which implicated the particular concerns discussed by this Court as to the unknowing waiver of important rights and which do not apply to *bona fide* employment agreements. **Id**. at 17-22.

For her part, Ms. Cobb retorts that our caselaw generally, and **Chilutti I** particularly, makes it clear that for any party to waive their right to a civil trial, the waiver must be explicit. **See** Ms. Cobb's brief at 11. She contends that recent developments in the law worked to place arbitration provisions "on the same footing as all other contracts[.]" **Id**. at 12. Ms. Cobb agrees with the trial court that Tesla did not satisfy its burden of demonstrating an explicit waiver of her right to a jury trial, noting that the agreement does not discuss "waiver" or make any attempt to make the provision more conspicuous than the text surrounding it. **Id**. at 16-17. She also argues as that the employment Agreement in question ought to be treated fundamentally the same as the electronic consumer contracts examined in **Chilutti I**, since both are electronic, digitally signed, and "contracts of adhesion." **Id**. at 18.

Upon review of the applicable law and the certified record, we conclude that the trial court erred in denying Tesla's motion to compel arbitration. Specifically, the court incorrectly determined that no valid agreement to arbitrate exists. Rather than adopting the broad view of our law applicable to the enforceability of arbitration agreements advanced by Ms. Cobb and the trial court, which was influenced by their reading of the now-overturned **Chilutti I** decision, we abide by the well-established test that "to determine

whether a valid agreement to arbitrate exists, courts apply state law principles of contract law." *Santiago*, 343 A.3d at 1004.

In so doing, we note that here, the arbitration provision, slightly less than one page in length, was included within the four corners of Ms. Cobb's three-and-one-half-page employment contract. It was agreed upon in consideration for her employment with Tesla and the benefits pertinent thereto. The provision specified that arbitration would be done through JAMS "under the then current rules of JAMS for employment disputes," and described which matters fell within the scope of the agreement and which were excluded. Ms. Cobb further provided an electronic signature at the end of the document, which complies with the Pennsylvania Uniform Electronic Transactions Act. *See* 73 P.S. § 2260.303(d) ("If a law requires a signature, an electronic signature satisfies the law."). Hence, it is plain that there was a valid agreement to arbitrate. *See*, *e.g.*, *Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 682 (Pa.Super. 2022) (identifying that the elements of a valid contract are "offer, acceptance, and consideration").

Furthermore, it is not fatal to Tesla's claim that the Agreement did not contain a definition for the word "arbitrate" or did not expressly state that Ms. Cobb was agreeing to waive her right to a jury trial. As our Supreme Court has recognized, it is evident that "[a]n agreement to submit a claim to arbitration forfeits the right to have that claim adjudicated in court." *Santiago*, 343 A.3d at 1012. In the context of a single-document employment agreement, as opposed to a hyperlinked or mobile-device-

application consumer product or services contract, a definite promise to arbitrate satisfies both the requirement that it be explicit and manifest an assent to arbitration.[6]

Having determined that there was a valid agreement to arbitrate in this case, the next inquiry required by our caselaw concerns whether the parties' dispute falls within the scope of the arbitration provision. **Smay**, 864 A.2d at 1270. However, as noted, the trial court did not reach that question here. Furthermore, neither party offers any substantive advocacy as to this issue or provides any pertinent legal authority.[7] As such, we will not decide this question for the first time on appeal based on undeveloped arguments. Instead, we deem that the appropriate course of action is to remand the

---

[6] Assuming *arguendo* that the general principles articulated by this Court in **Chilutti I** represent the current state of the law, notwithstanding the fact that the case has been overturned, we do not find that the particularized requirements for conspicuity of arbitration agreements outlined in that case apply here. Instead, it is clear that the decision arose from, and pertained to, a specific context, namely browsewrap agreements that sought to impose arbitration agreements in the most subtle of ways, namely where there was a high likelihood the user did not see or agree to the pertinent arbitration provision before accepting a service. **See**, **e.g.**, **Tincher v. Omega Flex, Inc.**, 104 A.3d 328, 397 (Pa. 2014) (reiterating that "decisions are read against the facts because our decisional law generally develops incrementally, within the confines of the circumstances of cases as they come before the Court" (cleaned up)). Stated plainly, even if the legal analysis underlying **Chilutti I** is sound as to the enforceability of browsewrap arbitration agreements, it simply has no bearing outside that peculiar context.

[7] The only mention of the scope of the arbitration is within Tesla's brief, wherein it avers that Ms. Cobb did not challenge the question below. **See** Tesla's brief at 3. Our review demonstrates that while that may be true, Ms. Cobb nonetheless reserved her right to dispute this claim in her response to Tesla's petition to compel arbitration. **See** Answer, 4/25/24 at 12.

matter for the trial court to consider this component of Tesla's petition to arbitrate.

In sum, we conclude that a valid agreement to arbitrate exists as between Tesla and Ms. Cobb. Accordingly, we vacate the trial court's order denying Tesla's petition to compel arbitration and remand for the court to determine whether Ms. Cobb's claims are within the purview of the arbitration provision.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/18/2026

- 11 -